### STATE BANK OF DECATUR *v.* SANDERS.

### Opinion delivered October 19, 1914.

1. VENDOR AND PURCHASER—COMPLETED SALE—RELATION BETWEEN PARTIES—CONSTRUCTIVE TRUST.—A. entered into a contract with B. by which he sold land to B. for $900, B. paying $200 of the purchase money and agreeing to execute a note for the balance when the deed was executed, and that A. have either a vendor's lien in the deed or a mortgage on other land, and in pursuance thereof B. entered into immediate possession and made substantial improvements on the land. *Held,* the contract and acts of the parties established the relation of vendor and vendee between the parties, and from the time the sale was consummated A. became a constructive trustee for B.

2. VENDOR AND PURCHASER—SALE OF LAND—VENDOR AS CONSTRUCTIVE TRUSTEE.—The moment that a contract for the sale and purchase of land is entered into, and the relation of vendor and vendee is constituted, the vendor becomes a constructive trustee for the purchaser.

3. VENDOR AND PURCHASER—SALE OF LAND—PAYMENT—POSSESSION—STATUTE OF FRAUDS.—An oral contract of sale of land is completed and taken out of the statute of frauds, by the vendee's paying part of the purchase price, and entering into the possession of the property.

4. LIENS—JUDGMENT-LIEN—ATTACHES TO WHAT ESTATE.—A judgment-lien may attach only to an estate in land, and not to a lien on land.

5. LIENS—VENDOR'S LIEN—EXECUTION—JUDGMENT-CREDITOR.—A. sold land to B. retaining a vendor's lien, *held,* a judgment-creditor of A. can not levy execution upon A's. lien on the land sold B.

Appeal from Benton Chancery Court; *T. Haden Humphreys,* Chancellor; affirmed.

Appellee instituted this suit against appellant in the Benton Chancery Court, stating, in substance, that on the 4th day of April, 1910, William Frazer was the owner of certain lands which were on that day sold to P. J. Sharpe in consideration of $900; that at that time Sharpe paid $200 in cash and agreed to give a mortgage on other lands or a vendor's lien on the land purchased for the balance of $700, which was evidenced by a note; that on the day the sale was consummated as aforesaid Sharpe took possession of the land; that Frazer investigated the other land which was offered by Sharpe as security for the $700, and that same was unsatisfactory. He, therefore, on the 1st day of April, 1911, executed a warranty deed to Sharpe, reserving therein a vendor's lien for the balance of the purchase money, towit: $700, as formerly agreed; that Sharpe continued in possession of the land until January, 1912, when, for a valuable consideration, he sold the same to appellee Sanders, who went into possession and continues to hold the same as the owner thereof; that Sharpe and Sanders both made valuable improvements on the land. It is further alleged that appellant bank, on the 28th of March, 1911, recovered a judgment for more than $1,000 against Frazer; that the equities and rights of appellee are superior to the claim of the appellant by virtue of its judgment, and that such claim of appellant was a cloud upon appellee's title. Appellee prayed that his title be quieted.

Appellant bank filed a combined demurrer, answer and cross-complaint, in which it was alleged that Frazer was the owner of the land at the time the bank's judgment was obtained against him, and denying, on information and belief, that Sharpe and Sanders had made any improvements on the land, and alleged that if any one did that it was done after the rendition of the judgment in appellant's favor. The appellant prayed that appellee's

complaint be dismissed for want of equity and that the land be sold to satisfy appellant's judgment.

Frazer testified, in substance, that in December, 1910, and for some time prior thereto, he was the owner of the land in controversy; that in December, 1910, he sold the land to Sharpe in consideration of $900; that a cash payment of $200 was made at that time, and it was then agreed that at Frazer's election he might thereafter take a mortgage on other property or reserve to himself a vendor's lien on the property for the balance of the purchase money; that on the 1st of April, 1911, he executed a warranty deed to Sharpe to the land and reserved in the deed a vendor's lien; that the lien was paid off and satisfied on April 16, 1912, by Sanders. On the day he (Frazer) sold the property to Sharpe, Sharpe took the actual control, possession and management of the farm and so continued until January, 1912. Improvements were made right away after Sharpe bought the land. He asked permission the day he made the deal to go to work on the place, saying that he wanted to fence the place. Witness thought he went to work immediately. The improvements were made before Sharpe got the abstract. At the time witness sold and contracted the land to Sharpe he did not advise him anything about the bank having a judgment against him (Frazer) because at that time they did not have a judgment or a suit pending. Neither did witness advise Sharpe at the time witness made the deed to him or when the note was finally paid off that a judgment had been rendered against the witness.

Witness further said, on cross-examination, that Sharpe went in possession of the land as soon as he bought it, but that he did not move on the farm. He made posts and fenced the land and cleared up some of the land and fixed up a spring on the same. He further testified that Sanders discovered that the bank had a judgment against him (Frazer) from the abstract. The deed which witness executed to Sanders bears the true date.

Sanders testified that he bought the land in controversy from Sharpe in February, 1912; that he paid Sharpe at the time $200 and agreed to pay Frazer the balance of the purchase price of $700 which Sharpe owed Frazer on the land; that he and Sharpe had made improvements, consisting of clearing and fencing, of the value of $300 on the land; that at the time he bought from Sharpe, Sharpe made and executed a deed to him for the land; that in April, 1912, he paid to Frazer the $700 balance of purchase money which Sharpe was due him.

On cross-examination, he testified that Sharpe never actually resided on the land. Witness got the abstract from Frazer some time after Sharpe had deeded him the land; he did not remember just how long after it was. He discovered that the Bank of Decatur had a judgment in its favor when he got the abstract. All the improvements that he (Sanders) had put upon the land had been since April 1, 1911. Appellee thought that he had learned that the appellant bank had a judgment against Frazer prior to the time he paid Frazer the $700, the balance of the purchase money. He says: "I had already obligated myself to pay it before I had notice or knowledge of the judgment."

Sharpe testified, in substance, that just after he contracted for the land he had full possession of it; made fence posts and boards and did other work on the place. At the time he contracted for the land and at the time it was deeded to him he had no notice of any judgment against Frazer. At the time he sold the land to Sanders, Sanders agreed to pay Frazer the $700 balance which Sharpe owed him on the land. Sharpe says he never lived on the land but camped there while he was working on the place.

One witness, on behalf of appellant, testified substantially as follows: That he lived on lands adjoining the land in controversy, and that if Sharpe ever lived on the land or ever made any improvements on it he did not know anything about it. He might have made posts on

the land and might have built fences and cleaned out the spring, but, if so, witness did not know anything about it; he had not seen any of these improvements and did not think that he had made any.

Another witness testified in substance that he lived on a farm adjoining the land in controversy; that Sharpe never lived thereon and never had his family or stock thereon that witness knew of. Witness did not know of any improvements on the farm that Sharpe made; would have seen any noticeable improvements. Another witness testified to substantially the same effect.

Appellant introduced the record of deeds showing that the date of the execution of the deed from Frazer to Sharpe was April 1, 1911, and recorded on December 19, 1911, and that a vendor's lien was reserved in the face of the deed in favor of Frazer for the purchase money, which was due and payable seven years after date.

The abstract mentioned by the appellee in his deposition was read by appellant as evidence, and it showed that the land was conveyed by Frazer to Sharpe on April 1, 1911, and that appellant's judgment was rendered March 28, 1911.

The court found that appellee at the time of the bringing of the suit was the owner and in the actual possession of the land in question; that appellant's judgment is not a lien on the land or any interest therein, and entered a decree dismissing appellant's cross-complaint for want of equity and quieting appellee's title.

This appeal has been duly prosecuted.

*Walter Mathews* and *McGill & Lindsey,* for appellant.

1. Appellant had no notice, actual or constructive. Kirby's Dig., § 763. Sharpe never was in actual possession. 30 Ark. 110; 16 *Id.* 543; 106 *Id.* 332; 90 *Id.* 149; 101 *Id.* 163; 107 *Id.* 314; 92 *Id.* 30.

2. It was necessary that part of the purchase price should be paid, but actual and continuous possession must

be taken under the contract and improvements made. 106 Ark. 332; 90 *Id.* 149.

. 3. The lien of the judgment attached to the land if Frazer had any interest. Pom. Eq. Jur., vol. 3, § § 1260-1263. Under our statute both legal and equitable estates can be sold under execution. Kirby's Dig., § 3228. See 13 N. Y. 180; 70 Am. St. 397, and notes; 93 Am. Dec. 337; 23 Cyc. 1373; 91 N. W. 404. 66 Ark. 167, is not in conflict with the rule.

*Rice & Dickson,* for appellee.

1. When Frazer sold the land to Sharpe, received part payment and parted with possession, etc., the relation of vendor and vendee was created, and Frazer had no interest to be taken on execution or other process. 106 Ark. 336; 16 *Id.* 543; 40 *Id.* 149; 55 *Id.* 116; 60 *Id.* 90; 66 *Id.* 170. See also 55 Ark. 116; 60 *Id.* 90.

2. The vendor here became a trustee for the purchaser. 84 Ark. 160; 67 *Id.* 325.

WOOD, J., (after stating the facts). The finding of the chancellor that at the time of the bringing of this suit appellee was the owner and in the actual possession of the land in question was not clearly against the preponderance of the evidence. The preponderance of the evidence tends to prove that Frazer entered into a contract with Sharpe in December, 1910, by which he sold the land at that time to Sharpe for a consideration of $900; that Sharpe at that time paid $200 of the purchase money and agreed to execute his note for the balance when the deed to him was executed, and that Frazer should have the option either to reserve a vendor's lien in the deed or take a mortgage on other land, and that in pursuance of this contract Sharpe entered into the immediate possession of the land and made substantial improvements thereon.

This evidence establishes the relation of vendor and vendee between Frazer and Sharpe. The contract of sale was fully consummated in December, 1910, and from that time on, according to the doctrine announced by this

court, Frazer, the vendor, became a constructive trustee for the vendee, Sharpe.

In *Stubbs* v. *Pitts,* 84 Ark. 160, this court, through, Judge RIDDICK, quoted the following from Lord Hatherly, in *Shaw* v. *Foster,* L. R. 5, H. L. 321; *Lysaght* v. *Edwards,* L. R. 2, Ch. Div. 499-506. "That moment that a contract for the sale and purchase of land is entered into, and the relation of vendor and vendee is constituted, the vendor becomes a constructive trustee for the purchaser." And, continuing, Judge RIDDICK says: "This is founded on the principle that equity treats that as done that ought to be done. By the terms of the contract, the purchase price ought to be paid to the vendor, and the land ought to be conveyed to the vendee; equity, therefore, regards this as done. The consequences of this doctrine, says Professor Pomeroy, are carried out. As the vendee holds the equitable estate, 'he may convey or encumber it, may devise it by will; on his death, intestate, it descends to his heirs, and not to his administrators. In this country his wife is entitled to dower in it; a specific performance is after his death enforced by his heirs; in short, all the incidents of a real ownership belong to it.' 1 Pom. Eq. § 368. In commenting further on this doctrine, the learned author says that it is a mistake to suppose that this doctrine does not apply until the purchase price is paid. It applies at once, so soon as a valid contract of sale is made, though, until the purchase money is paid, it is a lien on the equitable estate of the vendee, and by the enforcement of this lien in a court of equity the equitable estate of the vendee may be sold or cut off."

And in *Strauss* v. *White,* 66 Ark. 167-170, we held, quoting from other cases, that "when the owner sells land, takes the notes of the vendee for the purchase money, and executes to him a bond for title, the effect of the contract is to create a mortgage in favor of the vendor upon the land to secure the purchase money, subject to all the essential incidents of a mortgage, as effectually as if the vendor had conveyed the land by an absolute

deed to the vendee, and taken a mortgage back to secure the purchase money."

In one of those cases, *Hardy* v. *Heard,* 15 Ark. 188, it is said: "The vendee, in analogy to the mortgagor, is the owner of an equity of redemption, and that this is the real and beneficial estate, which is descendable by inheritance, devisable by will, and alienable by deed, precisely as if it were an absolute estate of inheritance at law, subject, of course, to the rights of the vendor."

The fact that the vendor in those cases executed his bond for title to the vendee can make no difference in principle. Here the contract of sale was entered into and completed and taken out of the statute of frauds by the vendee paying part of the purchase price and entering into the possession of the property. His rights then, as vendee, by these acts, became as completely established under the agreement as if the vendor had executed to him a bond for title.

In the recent case of *Barrett* v. *Durbin,* 106 Ark. 336, Durbin, by oral agreement, contracted to sell land to Bell. Bell paid part of the purchase money and went into possession. After this Durbin executed a deed conveying the land to Myers, who claimed to be an innocent purchaser. We held that Durbin had no interest in the land that he could convey to Myers; that Durbin had sold all the interest that he had in the land to Bell, notwithstanding there was no deed or written contract.

The principles announced in those cases are controlling here, and show that appellant, by its judgment, obtained after Frazer sold the land to Sharpe, acquired no lien on the lands in controversy. A judgment lien, in the language of learned counsel for appellant, "only attaches to an estate in land—not a lien on land. An estate in land is the right to the possession and enjoyment of it. A lien on land is the right to have it sold or otherwise applied in satisfaction of a debt."

Here, under the facts, the only interest Frazer had in connection with the land which he had sold to Sharpe was to have the land sold to satisfy his vendor's lien in

case Sharpe failed to pay the purchase money. But this lien in favor of Frazer, as the vendor, did not give appellant the right to subject the land to sale in satisfaction of its judgment against Frazer. This lien being a mere security for the payment of Frazer's debt, it was not vendable under execution issued on appellant's judgment. The uncontradicted evidence shows that Sharpe carried out his contract of purchase with Frazer. He, therefore, had the right to have the title to the land quieted in himself and the appellee succeeded to all the rights that Sharpe had under his purchase.

The decree is, therefore, correct, and it is affirmed.