ARNOLD *v.* ARNOLD.

4-4374

Opinion delivered November 2, 1936.

*W. F. Reeves,* for appellants.

*Ben C. Henley* and *M. A. Hatchcoat,* for appellee.

SMITH, J. Appellant, Sarah Arnold, is the widow of John Arnold, who was the son of William Arnold, deceased. Luther Arnold and Suad Hensley are the children of the said John Arnold and Sarah Arnold, and they have joined their mother as appellants. Their prayer for

an appeal contains the recital that they "pray an appeal from the decree and judgment of the chancery court of Searcy county, Arkansas, rendered October 29, 1935, finding that the heirs-at-law of William Arnold, deceased, were the owners of a certain strip of land out of the northeast quarter of northwest quarter of section 3, township 15 north, range 17 west, first by oral purchase and delivery of possession, and, second, by adverse possession; also by finding that the lands were not susceptible of partition in kind, to all of which findings and decree the appellants excepted and prayed an appeal to the Supreme Court." Certain other questions were adjudged in the decree from which this appeal comes; but we confine our consideration and decision to only so much thereof as has been appealed from.

The principal question in the case is the one of fact whether William Arnold had acquired title to and was the owner at the time of his death of the land above referred to. The question arose in a suit for partition of the lands of William Arnold, brought by W. J. Arnold, who is a son of William Arnold. The complaint alleged that there are eight shares owned either by children or by the descendants of deceased children, who are named. It was alleged that in addition to the one-eighth interest which he had inherited W. J. Arnold had acquired by deed four other shares, making him the owner of an undivided five-eighths interest. The complaint described the lands which it was alleged William Arnold owned at the time of his death, including the strip of land above referred to. The title to the remainder of the land is not in dispute.

It is admitted that William Arnold was in possession of this land at the time of his death, which occurred in 1898, but it is alleged in the answer filed by appellants that this possession was permissive and always at the sufferance of his son, John Arnold.

It appears to be undisputed that John Arnold purchased a tract of land of which the disputed strip of land was a part, and that he remained in possession of that tract, except the strip in question, until his death, which

occurred in 1889, and that this possession has since been continued by appellants.

The testimony is both voluminous and conflicting, but the decree here appealed from contains the following finding of fact: "* * * that W. J. Arnold, Sr., and his son, Johnny Arnold, had at a time when they were both living, become the owners of farms which adjoined in the northeast quarter of northwest quarter of section 3, township 15 north, range 17 west, said lands having been conveyed to them by purchase from one McCarn in the year 1877; that at and after the purchase a dispute arose between William Arnold, Sr., and Johnny Arnold as to the true location of the line between their respective adjoining properties, and that by oral agreement in the year 1885 they fixed their boundary line at the fence now standing in said quarter section referred to, William Arnold paying Johnny Arnold $100 for the lands lying west of said fence; that William Arnold went into the immediate open and adverse possession of said strip of land lying west of said fence and continued to hold and cultivate the same up to Johnny Arnold's death in the year 1889; and that William Arnold's heirs have continued to hold and cultivate the same up until the present time, and that that possession since 1885 has been open, notorious, exclusive and adverse; * * *.''

That this possession had continued for the time found by the court is established by testimony with but little, if any, dispute. Whether that possession was permissive and at the sufferance of John Arnold prior to his death and by his widow and heirs since that date is a sharply disputed question. We think no useful purpose would be served by the recital of this testimony, and it must suffice to say that the express finding of fact made by the court, set out above, does not appear to be contrary to the preponderance of the evidence.

Sarah Arnold was 73 years old at the time she testified in the case. It does not definitely appear when she and John Arnold were married. It is undisputed that Mrs. John Arnold never joined in any conveyance of her dower to William Arnold, and she, therefore, insists that

she has dower rights therein. This suit was filed in December, 1934, and her husband died in 1889. She has had the right, therefore, since the date of her husband's death to have dower assigned, but she took no action to enforce that right against the disputed strip of land for a period of forty-five years, during all of which time the possession of William Arnold, begun in the lifetime of John Arnold, has continued through William Arnold's heirs general. Indeed, it does appear that Mrs. John Arnold had dower assigned her in the lands of her husband, but dower was not assigned in the disputed strip.

The right of homestead is claimed for the children of Sarah Arnold, appellants herein, who were minors at the time of their father's death. It may be first said that the testimony does not establish the fact that the disputed strip of land was ever a part of the homestead of John Arnold. But, even so, a child born in the year of John Arnold's death in 1889 was forty-five years old when the suit was brought, and any homestead right had long since expired.

The testimony of appellee is to the effect that William Arnold advanced the sum of $100, which was used in paying for the tract of which the disputed strip was a part, and that in consideration of this advancement William Arnold was given the strip in question, and when later a dispute arose as to what land had been assigned William Arnold that question was settled by establishing a line, upon which a fence was built, which has since enclosed the disputed strip as a part of William Arnold's farm. If anything additional is necessary to dispose of the claim of the children of John Arnold, it may be said that if appellee's contention is correct, as the court found it to be, then William Arnold took possession of the land under the agreement entitling him to do so in the lifetime of their father, and this adverse holding, begun in the lifetime of their ancestor, put the statute of limitations in motion against John Arnold, and its running was not arrested by his death. *Freer* v. *Less.* 159 Ark. 509, 252 S. W. 354.

The fact that no deed was ever made from John Arnold to William Arnold is now unimportant. If appellee's testimony is true, the execution of a deed could have been specifically enforced against John Arnold in his lifetime or against his heirs after his death, and it appears that after John Arnold's death his administrator attempted to execute a deed. The validity of this administrator's deed is unimportant. The law is that when a contract for the sale of land is made, pursuant to which possession is delivered and the purchase price paid, equity will decree specific performance of the contract to convey. Cases cited in *State Bank of Decatur* v. *Sanders*, 114 Ark. 440, 170 S. W. 86, and the cases which cite it are to that effect. Still other cases, of which there are many, are cited in appellee's brief.

Appellants cite the cases of *McGee* v. *Russell*, 49 Ark. 104, 4 S. W. 284, and *Moore* v. *Willey*, 77 Ark. 317, 91 S. W. 184, 113 Am. St. Rep. 151, as supporting their contention that it was error to order the sale of the lands for purpose of partition, in the absence of a report first made by commissioners that a division in kind was not practicable.

In the case first cited it was said that it may be conceded that in proceedings for partition of land each party has a right to have his interest set apart in kind so far as can be done without material detriment to the interests of others, and that when commissioners appointed to make partition report that this cannot be done, they should state the facts upon which that conclusion is based. But it was said in the case of *Moore* v. *Willey, supra,* that it was not absolutely necessary in all cases for the court to appoint commissioners to ascertain whether partition could be made without a sale, but that a sale should not be ordered until the court had first ascertained from testimony heard on that question that a partition in kind in a particular case was not feasible. Where that fact is adjudged after proper inquiry a sale may be ordered in the first instance without appointing commissioners to ascertain a fact which has already been adjudicated.

The court heard testimony on this issue and made a finding "* * * that said lands are so diverse in nature and quality as not to be susceptible of division in kind without great prejudice to the parties hereto." H. A. McEntire, a disinterested witness, who was forty-seven years old, testified that he had been familiar with the lands all his life. This witness stated that "The way the land lies it looks like it would be almost impossible to divide it equally, the way the land lies it looks like it would be best to sell it all together." W. J. Arnold testified that the lands lay from the river bottom to the hills, and that there were three different types of land, all of which did not lie in a body, and that it would be a hard job to give each a portion of the good land and of the sorry land. No testimony to the contrary was offered. Under this testimony we think the court did not abuse its discretion in finding that partition could not be made in kind and in ordering it sold without appointing commissioners and awaiting their report.

The court's findings do not appear to be contrary to the preponderance of the evidence, and the decree must, therefore, be affirmed. It is so ordered.