YOUNG v. YOUNG.

5-3396                                      384 S. W. 2d 469

Opinion delivered December 14, 1964.

[Rehearing denied January 18, 1965.]

*Bridges, Young & Matthews* and *Coleman, Gantt, Ramsay & Cox,* for appellant.

*Gregory & Claycomb,* for appellee.

ED. F. McFADDIN, Associate Justice. The appellee, Mrs. Dema Young, filed this suit against the appellant,

Raymond A. Young,[1] to enjoin him from selling—during her lifetime—the home in which she was living, and also to require him to pay her one-third of the amount for which he had sold the business, known as Young's Laundry and Cleaners, in Pine Bluff, Arkansas. Mrs. Young claimed that in 1945 Mr. Young made an oral contract with her, which she was seeking to enforce in this suit. Mr. Young denied any such contract, and pleaded the statute of frauds (Ark. Stat. Ann. § 38-101 [Repl. 1962]). Trial in the Chancery Court resulted in a decree awarding partial relief to Mrs. Young. From that decree Mr. Young has appealed, claiming that Mrs. Young was entitled to no relief; and Mrs. Young has cross appealed, claiming she was entitled to more relief than the chancery Court awarded her.

The appellant lists three points, which we consider together. They are:

"I. An oral contract to make a will or convey an interest in land must be established by clear, cogent and convincing evidence.

"II. Performance to take an oral contract out of the statute of frauds must consist of extraordinary services and constitute a sacrifice.

"III. The proof does not establish the oral contract alleged by appellee."

The rule has been many times stated by us: an oral contract to make a will or to convey an interest in land must be established by evidence that is clear, cogent, and convincing. *Watts* v. *Mahon,* 223 Ark. 136, 264 S.W. 2d 623; *Crowell* v. *Parks,* 209 Ark. 303, 193 S.W. 2d 483; *Jensen* v. *Housley,* 207 Ark. 742, 182 S.W. 2d 758. Here, we have evidence of possession taken by Mrs. Young under the alleged contract, and also part performance by

[1] Mr. Young had authorized the National Bank of Commerce of Pine Bluff to act as his Agent and Attorney to collect the rents on his real estate and the payment due him for the sale of the laundry business, so the said Bank was joined as a party defendant, and is also a party appellant here. But the real litigation is between Mr. Young and Mrs. Young, and we will refer to them as though they were the only litigants.

her; and such evidence, if believed, is sufficient to take the contract out of the statute of frauds. *State Bank* v. *Sanders,* 114 Ark. 440, 170 S.W. 86; *Ferguson* v. *Triplett,* 199 Ark. 546, 134 S. W. 2d 538; *Harper* v. *Albright,* 228 Ark. 760, 310 S.W. 2d 475. But the question still remains as to whether Mrs. Young offered the quantum of evidence required *i.e.,* "clear, cogent, and convincing", which was said in one of our cases to be "substantally beyond a reasonable doubt." (*Crowell* v. *Parks, supra.*) To answer that question requires a study of the evidence.

Mr. Young appears to have owned several pieces of real property in Pine Bluff, and also to have owned and operated a rather profitable business known as Young's Laundry and Cleaners. Mr. and Mrs. Young were married in 1927. Mrs. Young had been working in the business before the marriage, and continued to do so thereafter, being practically the manager of the cleaning portion of the business. In 1941 the parties were divorced; and Mrs. Young moved to Little Rock, where she obtained employment in a cleaning establishment. In 1945 Mrs. Young returned to Pine Bluff and resumed employment in Young's Laundry and Cleaners. The terms and conditions under which this happened are in great dispute and give rise to the present litigation.

Mrs. Young testified that in 1945 Mr. Young came to her and said he needed her to assist in the management of the laundry and cleaning business, and orally agreed with her that if she would return to Pine Bluff and assist in the management of the business, he would not only pay her a good salary, but would also give her a home in which to live for her entire lifetime, and would make a will leaving her one-third interest in the laundry and cleaning business. She testified that she faithfully performed her part of the contract, and that he had breached his contract by selling the business without paying her anything and was threatening to breach the remainder of the contract by moving her out of the house where she was living. Mrs. Young testified positively·

and unequivocally as to the 1945 contract with Mr. Young, and she was corroborated, in whole or in part, by a number of witnesses, some of whom were not related to either of the parties.

It was shown—and admitted by Mr. Young—that ever since Mrs. Young returned to Pine Bluff in 1945 she had lived, rent free, in some house owned by Mr. Young, and was so living at the time of the litigation. It was also shown that in addition to her salary for working in the business, Mr. Young had also given her annual bonuses. Several witnesses—unrelated to the parties —testified that they had heard Mr. Young say that Mrs. Young would own a one-third interest in the business at his death and that she would have a home as long as she lived. One witness testified that before Mrs. Young returned to Pine Bluff in 1945, Mr. Young said to Mrs. Young in the presence of said witness: ''I want you to be a part of the business and I would like to furnish you a home for the rest of your life, and you can have a job as long as you want it and a third of the business in my will at the time of my death.''

Mr. Young admitted that Mrs. Young had lived, rent free, in a house of his ever since 1945; but he claimed that he let several of his employees have free house rent. He testified at length in denial of the alleged 1945 contract; and two other of his former employees testified that they had never heard of the alleged 1945 contract. The Chancellor heard the evidence *ore tenus*. He saw the witnesses and observed their manner of testimony. If Mrs. Young and her witnesses are to be believed, then she certainly offered the required quantum of evidence as to the 1945 contract. A study of the printed page inclines us to the view that their evidence had the ring of sincerity, reasonableness, and honesty; and we affirm the degree on direct appeal.

*Mrs. Young's Cross Appeal.* In July 1961 Mr. Young sold the laundry and cleaning business for $60,000.00 and that sale precipitated this litigation. The Chancellor awarded Mrs. Young the equivalent of a life estate in the

home where she was then living, and also awarded her what amounted to a one-third interest in the balance still remaining unpaid by the purchaser for laundry and cleaning business, and this amount so awarded her was approximately $12,000.00. On her cross appeal Mrs. Young claims that she is entitled to a judgment for $20,000.00, being one-third of the total sale price of the business. She claims that Mr. Young's act in selling the business, in effect, matured the contract to will her one-third of the business, and she cites this statement from Corpus Juris Secundum, Vol. 17A, p. 649, "Contracts" § 470: "The act of a party in voluntarily placing it out of his power to perform a contract on his part does not relieve him of liability for non-performance; but constitutes a breach of the contract, for which an action may be brought although the time for performance has not yet arrived under the terms of the contract." She also cites this statement from Corpus Juris Secundum, Vol. 94, p. 894, "Wills," § 125e: "In an action for damages for breach of contract the measure of damages is what the promisee has lost by the promisor's failure to keep his agreement, which is ordinarily the value of the property agreed to be bequeathed or devised . . ."

We are cited to no Arkansas case involving a situation exactly like the one here, and our search has failed to disclose such a case. This is an action for breach of contract to make a will before the death of the person who was to make the will. In addition to the text and cases cited in 94 C.J.S. p. 894, *supra*, we call attention to the text in 57 Am. Jur. p. 166, "Wills" § 189, and to the annotations in 69 A.L.R. 81 and 106 A.L.R. 751, on the subject, "Decedent's agreement to devise, bequeath, or leave property as compensation for services." It will be observed that these annotations relate to a situation arising *after* the death of the promisor, whereas here we are dealing with a situation that arose while the promisor was still living. In 57 Am. Jur. 166, "Wills" § 189, the text reads: "There is a conflict of opinion in reference to the measure of damages recoverable for a breach of contract to devise specific property in consideration of

services.'' We prefer to leave open the question of the measure of damages in a case like this one; and because of the state of the present record, we affirm the Chancellor's findings as to Mrs. Young's damages. Certainly the $20,000.00 claimed by Mrs. Young should be reduced to its present cash value; and the life expectancy of Mr. Young is not shown. Again, the value of the business is subject to some question. Mr. Young owned, and still owns the buildings and he is renting them to the purchaser. Whether the price of the business was made high or low on account of a favorable rent contract, is not shown. There was no testimony independent of the sale price as to the real value of the business. The Chancellor also gave consideration to the fact that Mrs. Young delayed for about two years after the sale before filing the present suit; and she could well have been waiting to see if sufficient of the purchase price was paid to prevent a return of the business to Mr. Young for any reason. We have mentioned several factors that might have entered into the Chancellor's assessment of the damages.

To conclude the matter, we also affirm the decree on Mrs. Young's cross appeal; but the costs of the entire appeal are adjudged against the appellant.

HARRIS, C.J., not participating.

GEORGE ROSE SMITH and JOHNSON, J.J. dissent.

(Supplemental opinion on denial of Petition for Rehearing P. 929.)

JIM JOHNSON, Associate Justice, (dissenting). I do not agree with the majority view. A careful study of the entire record before us impels me to the conclusion that the testimony in this case amounts to no more than a swearing match between partial witnesses. To say that the caliber of evidence here presented rises to the dignity of being so clear, cogent and convincing so as to be ''substantially beyond a reasonable doubt,'' *Crowell v. Parks,* 209 Ark. 803, 193 S.W. 2d 483, obliterates the sacred rule heretofore required to be followed to prove the existence of an oral contract to make a will.

For the reasons stated I respectfully dissent. GEORGE ROSE SMITH, J., joins in this dissent.