685 So.2d 953 (1996)
Florraine W. KELSEY, Appellant/Cross-Appellee,
v.
Troy L. PEWTHERS and Martha Pewthers, Appellees/Cross-Appellants.
No. 96-1262.
District Court of Appeal of Florida, Fourth District.
December 26, 1996.
Clarification Denied January 23, 1997.
*954 J. Terence McManus, North Palm Beach, and Randy D. Ellison, West Palm Beach, for appellant/cross-appellee.
H. Michael Easley of Jones, Foster, Johnston & Stubbs, P.A., and Jane Kreusler-Walsh of Jane Kreusler-Walsh, P.A., West Palm Beach, for appellees/cross-appellants.
POLEN, Judge.
Florraine Kelsey appeals a final judgment awarding her nephew and his wife, Troy and Martha Pewthers, damages of $242,000 plus prejudgment and postjudgment interest on their claim for breach of a contract to make a will. The judgment denied Kelsey's claims for rescission of the contract and rescission of a joint tenancy with right of survivorship securities account, yet Kelsey alleges error only as to the amount of damages awarded to the Pewthers and the trial court's failure to unfreeze the joint tenancy brokerage account. We decided this case on an expedited basis, announcing our preliminary ruling following oral argument. We reverse the final judgment.

FACTS
Kelsey, an eighty-nine year old widow, initiated conversations with the Pewthers regarding the possibility they would move from California to Florida to care for her, following the deterioration of Kelsey's relationship with her own daughter, Roseanne. The Pewthers visited Kelsey several times over the course of two years, and eventually moved to Florida. They executed a contract requiring them to care for Kelsey's personal, business, and financial affairs for the remainder of her life. The contract allowed for reimbursement of certain of the Pewthers' expenses and further provided:
As their sole compensation for the services rendered hereunder, Pewthers shall be entitled to receive all real and intangible personal property owned by Kelsey at the time of her death, subject to a life-income in favor of Kelsey's daughter to ten (10%) percent of such, as evidenced in the Last Will and Testament of Kelsey, entered into on October 6, 1992.
The Pewthers rendered services to Kelsey for approximately sixteen months, from April of 1993, to July 31, 1994, which included calling Kelsey each afternoon and driving her to various appointments when needed. At the end of July Kelsey ended the relationship when she called her daughter at 5:30 a.m., stating she feared Troy Pewthers was trying to kill her. Kelsey subsequently initiated this action seeking to rescind both the contract and the joint tenancy brokerage account she opened in 1992, which named Troy Pewthers joint tenant.
During trial the parties presented conflicting testimony regarding their intent in entering into the contract and transferring approximately $90,000 in securities to the joint tenancy account. Regarding damages on their cross-claim, the Pewthers introduced the testimony of Bernard Pettingill, an economist, who opined the present value of the Pewthers' expected inheritance from Kelsey as of August 1, 1994, was "around" $222,000, including an adjustment for 10% of the value of Kelsey's estate, which would inure to Roseanne. Pettingill's calculation did not account for the cost of over one year of litigation, nor did he consider Kelsey's expenditures since August of 1994.
Barring any "unforeseeable terminal problem that would cause [Kelsey] to be hospitalized and eat all of her estate up," Pettingill testified Kelsey's expenses between the date of trial and her death (another five and one-half years according to actuarial tables), would be approximately $85,000. The Pewthers also introduced testimony regarding unreimbursed bills totalling $14,714; however, they expressly removed these expenses from consideration advising the court they no longer sought reimbursement of expenses.
Regarding the securities account, Kelsey testified it was not her intent to gift these funds to the Pewthers, while Troy Pewthers *955 testified he believed Kelsey was giving him and his wife over $90,000 as a gift. The stockbroker who arranged the transfer believed Kelsey understood his explanation of the transaction, including the possibility the transfer could be construed as a gift.
The court accepted memoranda to supplement closing arguments. The Pewthers argued both money damages and a constructive trust were available remedies, and chose to seek damages rather than the imposition of a constructive trust. They sought $242,000, which included the value of Kelsey's estate as testified to by Pettingill, plus the value of three additional certificates of deposit.

THE FINAL JUDGMENT
The trial court found Kelsey failed to establish by clear and convincing evidence either fraud in the inducement, undue influence, or mistake, as to either the contract or the joint tenancy securities account. It ruled in favor of the Pewthers on their breach of contract claim, finding the Pewthers' cited case law supported either the imposition of a constructive trust on Kelsey's assets, or an award of money damages. Based on the Pewthers' stated choice in their trial memorandum, and relying on Dr. Pettingill's unrebutted testimony, the trial court awarded the Pewthers $242,000, plus prejudgment interest of $37,267.20 and postjudgment interest on the principal amount only. The decretal portion of the final judgment made no further mention of the joint tenancy securities account.

ANALYSIS
Kelsey argues the Pewthers are precluded from receiving benefit of the bargain damages against a living promisor for breach of a contract to make a will. She argues public policy compels this result, in that the final judgment awards a sum greater than her total assets, rendering her destitute in the final years of her life, and compelling her to become a ward of the state.
Absent any Florida authority directly on point, Kelsey relies on Westbrook v. Superior Court, 176 Cal.App.3d 703, 222 Cal.Rptr. 317 (1986), where that court interpreted a contract containing language similar to the language of the instant contract, which required Peter Fairchild to make a will leaving all of his property to Westbrook on Fairchild's death. Id. 222 Cal.Rptr. at 323. The court stated the contract contemplated Fairchild's liberty to sell, deal with and dispose of his property in any way except in fraud of the agreement. Id. Where the promisor agreed to leave to the promisee whatever property the promisor owned at the time of his or her death and the promisor had not yet died, it would be inappropriate to impose a constructive trust on specific property of the promisor because the promisor had the right to consume the property for reasonably necessary living expenses in good faith during his lifetime and to dispose of the property. Id. Further, the specific property in which the promisee may claim an interest cannot be identified until the death of the promisor. Id. See also In re Marriage of Edwards, 38 Cal.App.4th 456, 45 Cal.Rptr.2d 138 (1995) (stating "If the promise does not involve specific property but rather such property as the promisor owns at the time of death, the property to which the promisee has a claim cannot be identified until death."); Galloway v. Eichells, 1 N.J.Super. 584, 62 A.2d 499 (1948) (stating when particular property is involved a trust is imposed on that property; however, when agreement relates to residuary estate, and there may be none at the time of promisor's death, recovery during promisor's life may be had at law on quantum meruit for services rendered); and Matheson v. Gullickson, 222 Minn. 369, 24 N.W.2d 704 (1946) (stating living promisor entitled to full use of her property during her lifetime, without restriction except insofar as disposition may be fraud on her agreement with promisee, and allowing imposition of constructive trust on promisor's property for promisee's benefit).
We agree with the reasoning of these decisions, insofar as they support the award of quantum meruit damages during the promisor's life, or the imposition of a constructive trust on the promisor's property, allowing the promisor unrestricted use of her property during her lifetime, absent proof of fraud.
We are unpersuaded by the Pewthers' argument the Arkansas Supreme Court's decision *956 in Young v. Young, 238 Ark. 795, 384 S.W.2d 469 (1964), supports their position. As Kelsey notes, that court expressly avoided the precise issue raised by the instant appeal. The Young court affirmed the promisee's award of a sum less than the present cash value of specific property promised, noting a "conflict of opinion in reference to the measure of damages recoverable for a breach of contract to devise specific property in consideration of services," and stating its preference to "leave open the question of the measure of damages in a case like this one...." Id. 384 S.W.2d at 471-472. The court's unexplained affirmance in Young offers no guidance.
Finally, the facts in Farrington v. Richardson, 153 Fla. 907, 16 So.2d 158 (1944), distinguish it from the instant case. The Farringtons attended to Mr. Webster for approximately eight months, pursuant to Webster's agreement to pay their living expenses and continue a provision of his will "establish[ing] a trust in certain assets of the testator, the net income therefrom, at the death of Webster, to be paid to Mrs. Farrington for life, and upon her death, or in [the] event she predeceased Webster, to be paid to Mr. Farrington for and during his lifetime." Id. 16 So.2d at 160. When Webster terminated the agreement the Farringtons brought suit, which remained pending at the time of Webster's death. The suit continued against his estate, and the court ultimately directed a verdict against the Farringtons after ruling Mrs. Farrington's testimony to establish the oral agreement was inadmissible. The sole issue on appeal concerned the propriety of the court's ruling on the admissibility question.
After determining Mrs. Farrington's testimony was admissible, the appellate court proceeded to offer the trial judge guidance on remand by discussing in dicta the issue of damages. Id. 16 So.2d at 161-162. It noted Mr. Farrington was entitled to seek living expenses and the present value of the life income from the trust to himself; however, he was not entitled to seek the present value of the life income to his wife because such income would have been his wife's separate property, and such damages were so speculative as to be immeasurable. The court noted the measure of damages for breach of a contract "of this nature" is "the actual loss sustained by the promisee as a result of the promisor's failure to keep his agreement." Id. 16 So.2d at 162. The Pewthers rely on this reference as support for the contention they are entitled to damages equal to the value of the property they were to receive. We refuse to accept this contention for two reasons. First, the subject statement arguably constitutes obiter dictum only. Second, the court in Farrington was concerned with the measure of damages after the death of the promisor, unlike the instant case where a final judgment was entered against a living promisor. Therefore, we do not believe Farrington compels a different result here.

DAMAGES
Regarding potential damages to be allowed on remand, Kelsey argues the Pewthers elected their remedy by choosing in their trial memorandum to seek money damages rather than equitable relief. She argues the Pewthers are precluded from seeking either specific performance or another measure of money damages on remand. We disagree. The Pewthers' selection of a remedy that was essentially unavailable (i.e., money damages equal to the estimated value of an estate in the future), did not constitute an election of remedies. Rolf's Marina, Inc. v. Rescue Serv. & Repair, Inc., 398 So.2d 842, 843 (Fla. 3d DCA 1981) (stating if the remedy sought in the first instance does not exist at the time it is sought, then there is no election of remedies). Further, money damages and equitable relief are not inconsistent remedies; rather, both rely on the validity of a contract and seek redress for its breach. Klondike, Inc. v. Blair, 211 So.2d 41, 42-43 (Fla. 4th DCA 1968). Lastly, the purpose of the doctrine of election of remedies is to prevent a party from recovering twice for the same wrong. United Cos. Fin. Corp. v. Bergelson, 573 So.2d 887 (Fla. 4th DCA), rev. denied, 584 So.2d 998 (Fla.1990). This purpose would not be served by disallowing the Pewthers any recovery for Kelsey's conceded breach of contract.
*957 Therefore, we reverse the award of money damages to the Pewthers. On remand the Pewthers may choose between available damages in quantum meruit, based on existing testimony in the record regarding services the Pewthers provided Kelsey, or they may choose to seek the imposition of a constructive trust on Kelsey's assets subject to her unrestricted, reasonable use of those assets during her lifetime.

JOINT TENANCY SECURITIES ACCOUNT
Lastly, we decline Kelsey's invitation to reweigh record evidence regarding the parties' intent in establishing the joint tenancy with right of survivorship securities account. The trial court's determination that Kelsey failed to establish by clear and convincing evidence any basis for rescinding the joint tenancy in that account finds support in the record. Therefore, we affirm the denial of Kelsey's claim seeking to rescind the joint tenancy securities account. On remand, we direct the trial court to unfreeze the account.
REVERSED IN PART and AFFIRMED IN PART.
PARIENTE and GROSS, JJ., concur.