MARTIN *v.* GRAY.

4-7819                                   193 S. W. 2d 485

Opinion delivered March 4, 1946.

*Scott Wood,* for appellant.

*C. T. Cotham,* for appellee.

SMITH, J. Daniel C. Cole lived with his wife, Susie, in the city of Hot Springs for many years, and through his industry, and their frugality, had acquired valuable real estate in that city. Daniel died testate in 1931. By his will dated August 21, 1930, which was duly probated, he left his entire estate to Susie, his wife, who died testate in 1943.

No child, or descendant of a child, survived Susie, whose will was duly probated, and reads as follows:

"State of Arkansas,

"County of Garland.

"That I, Susie Cole, of the state and county aforesaid, being possessed of fair health, and of sound and disposing mind and memory, do make and publish this my last will and testament, hereby revoking all former wills by me at any time heretofore made.

"First. I direct that all my just debts be paid. I bequeath to my daughter, Alice Bell, all of my personal estate of every nature and kind, of which I shall die seized and possessed, or to which I shall be entitled at the time of my decease, to have to hold the same to her, the said Alice Bell, her heirs and assigns, to her and their use and behoof forever.

"Second. I devise to my said daughter Alice Bell, my residence, situated at No. 412 Pleasant Street, Hot Springs National Park, to have and to hold the same to her use and behoof forever, in the event the administrator do not find her then said property will to her to revert to sisters and brothers of myself and husbands.

"Third. I bequeath to Jennie Bolden the sum of ($1), one dollar only.

"Fourth. I devise the residue of my estate to my sisters and brothers and those of my deceased husband, D. C. Cole, respectively, to share and share alike, to have, to hold the same to their use and behoof forever.

(1)

"In testimony whereof, I hereunto set my hand and seal and publish and declare this instrument to be my last will and testament, in the presence of the witnesses hereto named, G. H. Green, attorney, and Jesse Jackson, who attest the same at my request this the 19th day of June, 1931.

her

"Susie  X  Cole

mark

"Testatrix."

CODICIL TO ABOVE WILL

"Whereas, I, Susie Cole, did on the 19th day of June, 1931, make my last will and testament, I do now by this writing add this codicil to my said will, to be taken as part thereof.

"Whereas, I made no appointment for an executrix to my will, I hereby appoint Laura J. Peakes executrix of this my last will and testament. She is to have charge in settling all my affairs, which I may have at the time of my decease, taking care of my funeral charges, as I have no other debts whatsoever, as I take care of my debts as soon as they are due. I do not owe anyone anything.

"IN WITNESS WHEREOF, I hereunto place my hand and seal, this fourth day of May, one thousand nine hundred and thirty-seven.

her

"Susie  X  Cole

mark

"Witness to mark
Allen Hotchkiss."

## Codicil to the Above Will

"Whereas, I, Susie Cole, did on the 19th day of June, 1931, make my last will and testament, I do now by this writing add this codicil to my said will to be taken as part thereof. I give and bequeath to my son-in-law, Clemmie Johnson, the husband of my daughter, Jessa Cole Johnson, who had died, my house at 416 Pleasant Street.

"In witness whereof, I hereunto place my hand and seal this 10th day of April, one thousand nine hundred and forty-three.

(Seal)

her
"Susie X Cole"
mark

This will and the codicils were duly attested.

When Susie made her will, she had two brothers and two sisters, all of whom died in her lifetime, but were survived by children. Daniel, her husband, had a brother, named Coleman, and a sister, named Millie Martin, who were alive at the time of Susie's death and still survive.

In August, 1944, Millie filed this suit against Coleman, her brother, and the heirs known, and unknown, of Susie, her sister-in-law, in which she alleged ownership of the entire estate of which Susie died possessed. She alleged that she was induced to leave the state of Georgia, where she and Daniel and Coleman, her brothers, had all been reared, to come to Hot Springs, by the promise of Susie that if she would do so, and live with Susie as her companion, Susie would, upon her death, leave her entire estate to her. Upon this allegation she prayed that the title to Susie's property be divested out of the devisees named in Susie's will and be vested in her, excepting a cottage, designated as No. 416 Pleasant Street, Hot Springs, Arkansas, which, by Susie's will, had been devised to Clemmie Johnson, who had married Susie's daughter who died in Susie's lifetime.

An answer was filed by Daniel's brother, Coleman, and numerous nephews and nieces of Susie, which denied that the alleged agreement had ever been made, or had

been performed, if made. They prayed the settlement of the estate, and the division thereof, and the nephews and nieces of Susie prayed that they be allotted the shares which their parents would have taken under Susie's will, had their parents survived Susie.

The court specifically found the fact to be that the testimony was insufficient to prove the agreement alleged, and further found that Susie had devised her property, with the exception of certain specific devises, not here involved, to a class, that class being the brothers and sisters of Daniel and Susie, and that only those members of that class who survived Susie, to-wit: Millie, herself, and Daniel's brother, Coleman, took any interest in the property under the will. By an appeal and cross-appeal, the correctness of both these findings is questioned.

The principal question in the case is, of course, the one of fact, whether Millie had a contract with Susie, whereby Susie agreed to devise her estate to Millie, and if so, whether Millie had so far performed the obligations inducing the contract as to require its enforcement.

Millie's testimony was to the following effect: She was living in Commerce, Georgia, when her brother, Daniel, died. But Daniel had written her before his death that she could come to Hot Springs and live with him and his wife, but she did not accept the invitation. She testified that she received three letters from Susie, the first of which she had lost. Another letter contained in an envelope postmarked August 10, 1933, reads as follows: "July 8, 1933. Dear Sister Millie. I received your letter and was glad to hear from you. Now if you can't come now it is no use to come at all. If you can't come before August, don't come. If you can't come see what I got for you now, you won't get nothing. I made you good offer. Anyone would accept it. There are others who want it." Evidently this letter refers to a prior letter on the same subject, but it does not state what the offer was, except that it was a good one which anyone would accept, and which others would accept.

The correspondence between Millie and Susie was conducted by others for them, as neither could read or write.

In reply to this letter Millie wrote that she could not come at that time, but would let her (Susie) know whether she would come later, and advised that if she came she would need money to pay the expenses of her journey to Hot Springs. In response to this letter Susie sent Millie money for the trip. Millie further testified that when she arrived in Hot Springs, Susie showed her the houses and lots which she owned in Hot Springs, and promised that they would all be Millie's if she remained with Susie until she died, and that in consideration of this promise she lived in the house with Susie and became her nurse and attendant, and in addition did the scrubbing and sweeping and that she was paid nothing for these services. Several witnesses gave testimony in corroboration, consisting principally of remarks by Susie to the effect that she intended for Millie to have her property when she died.

But there was much testimony tending to contradict, consisting in particular of statements made by Susie to the effect that she wanted and expected her kinfolks to have what she left. Testimony of one Cecelia Metayer is strongly adverse to the existence of the agreement upon which Millie relies.

This witness was a professional nurse, who had lived in the house with Susie, and for many years lived within a half block of her. It was this witness who wrote for Susie the letter which Millie received. She testified that when Susie was sick she attended her as a nurse, and that she performed many services for her, and that Susie had no other nurse. This witness testified as to the first letter written to Millie, which Millie had lost, which she wrote for Susie, which stated in substance, "if you will come here and stay with me, as I am all alone, I have five brick houses and I got all the money I need, and you can live with me and spend my money." She testified that Millie lived in the house with Susie, but that Millie did work for witness and other people; that both Susie and Millie kept house and each did their own

cooking and that in speaking of her property she had heard Susie say, "the only ones I would give it to would be my sisters and brothers and their children. They can have it."

Unquestionably Millie performed many services about the house for Susie, but so also did other members of Susie's family, notably a great niece named Mattie Gray, who testified that upon Susie's promise that she should have a home as long as she lived, she came from her home in Chicago, and lived with Susie for about two years, and that "Millie was doing laundry work for other people in the house and outside, washing and ironing, and I would clean up and wait on aunt Susie and help Millie, too," and that Susie paid her nothing for her services except her room and board.

No useful purpose would be served by reciting the testimony of several witnesses for or against Millie's claim, and it must suffice to say that we concur in the finding of the chancellor that the testimony to support Millie's claim does not meet the requirement of the law, which, as learned counsel representing Susie concedes, must be so clear as to be substantially beyond doubt. The law of the case is reviewed and restated in our opinion in the case of *Crowell* v. *Parks, ante,* p. 803, 193 S. W. 2d 483.

Any doubt which we might otherwise entertain about the insufficiency of the testimony is removed when we recall that Susie's will was written before Millie came to Hot Springs, and, except for two codicils, remained unchanged at the time of her death. These codicils, which are copied above, are themselves highly significant, as both were executed after Millie came to Hot Springs, in the first of which she named a woman other than Millie as her executrix, and in the second she devised a portion of her property to another person, although Millie testified that she came to Hot Springs pursuant to an agreement that she would have all of Susie's property by performing the conditions of the agreement which she testified she had done. Millie testified that this second codicil was executed with her consent.

Of course, if there was such an agreement and Millie had performed the obligations thereof, which formed the consideration therefor, her right to its enforcement would not be defeated by any will which Susie had made or might make, as this would be a fraud in derogation of a contractual right, but the testimony does not leave the impression that any fraud was practiced, and it falls far short of convincing us beyond substantial doubt that this was done.

It is not questioned that an agreement to will property in consideration of a service rendered is valid and binding, even when the agreement is oral and relates to real property. *Speck* v. *Dodson,* 178 Ark. 549, 11 S. W. 2d 456. But we find the testimony insufficient to support the contention that there was such an agreement.

The cross-appeal questions the finding of the chancellor that the fourth paragraph of Susie's will, which covers the property here in litigation, was a devise to a class, and that only those members of the class who survived Susie would take under its provisions, the insistence being that the nephews and nieces, the heirs at law of deceased brothers and sisters of Susie, take the share the ancestors would have taken had these ancestors survived Susie. It may first be said that the will devises to a class, and the law is that the membership of this class is to be determined as of the date on which the will became effective, that is, the date of the testator's death.

At § 127 of the chapter on Wills, 69 C. J. 249, it is said that: "Under the rule prevailing in the greater number of jurisdictions, the individuals composing the class are ordinarily ascertained at the time when the devise takes effect or vests and the gift is to those then in being." This statement comports with our holding in the case of *Morris* v. *Lynn,* 201 Ark. 310, 144 S. W. 2d 472. Annotated cases appearing in 49 A. L. R. 174; 30 A. L. R. 916; 20 A. L. R. 356; 13 A. L. R. 615, cite many cases which support the chancellor's finding.

The decree is correct and is affirmed.