## HINKLE *v.* HINKLE.

Decided March 19, 1892.

1. *Practice in equity—Trial by jury.*

In chancery causes there is no right to a trial by jury, although the court may of its own motion call in a jury; in such case the verdict rendered is advisory, and not binding on the court.

2. *Statute of frauds—Part performance.*

If a parol contract for a life interest in land be within the statute of frauds, the evidence of part performance in this case is *held* sufficient to take the case out of its operation.

APPEAL from *Crawford* Circuit Court in chancery.

HUGH F. THOMASON, Judge.

*Duval & Pitchford* for appellants.

1. In order to take a parol contract out of the statute of frauds by part performance, the agreement must be clearly proved, must be certain and definite. 39 Ark., 424; Younge, 346; 5 Ga., 341; Waterman, Spec. Perf., sec. 265; 5 Wait, Ac. & Def., 778. The doctrine does not apply between co-tenants. 44 Ark., 79.

2. It must also be mutual. 2 Wheat., 336; 6 Ohio, 383; 5 Wait, Ac. & Def., 788; 10 Wall., 359; 46 Iowa, 205; 6 Paige, 288; 2 A. K. Marsh., 346; 59 Am. Dec., 749.

3.   The alleged contract does not describe the lands.   18 N. J. Eq., 489; 40 Me., 130; 23 Ark., 704.

4.   The contract is supported only by the testimony of plaintiff, and is not corroborated by any witness as to ratification.   66 Ill., 428; 19 Pa. St., 461; 89 *id.*, 358; 46 Am. Dec., 246; 12 *id.*, 583; 40 Iowa, 309; 10 Watts, 195; 25 Pa. St., 306.

5.   The contract is unfair, unjust and unreasonable, and is vague and uncertain, nor is it shown that the legal remedy is inadequate.   33 Ark., 294; 31 N. J. Eq. (4 Tiff.), 91; 3 Cow., 445; 6 Johns. Chy., 222.

6.   It is not enforceable against plaintiff.   Both parties must be bound.   59 Am. Dec., 749; Waterman, Spec. Perf., secs. 196–7–8; 21 Cal., 40.   The party seeking performance must be free from blame.   12 Am. Dec., 431; 45 *id.*, 406; 46 N. H., 464; 48 *id.*, 167; 70 *id.*, 458.

7.   Equity will not enforce a specific performance of an agreement to enter into and carry on a partnership.   18 Am. Rep., 84; 63 Pa. St., 335; 17 Beav., 294; 5 Munf. (Va.), 442.   Nor for personal services.   12 Am. Dec., 213; 48 N. W. Rep., 221.   Nor the specific delivery of chattels, unless they have a value for the loss of which damages will not compensate.   16 Am. Dec., 606; 36 Ark., 317; 54 Am. Dec., 51.

8.   A full compliance on the part of the party seeking relief must be shown.   43 Ark., 184; 106 U. S., 145; 76 Ga., 272.

9.   Equity will not enforce a voluntary agreement, nor perfect a merely promised or imperfect gift.   5 Am. Rep., 556.

10.   Mrs. Lasater and John Hinkle have a reversionary interest in the lands decreed plaintiff.   63 N. C., 324; 38 Me., 520; 7 Beav., 189.

11.   The decree is unsupported by the evidence.

*Sandels & Hill* for appellee.

1.   The evidence fully sustains the finding of the jury and the decree.

2. The statute of frauds cannot be invoked as to the personalty, for possession was delivered. Mansf. Dig., sec. 3372.

3. The consideration was paid, and it was a valuable one. The contract was executed on both sides. Browne, Stat. Frauds, sec. 116; 40 Ark., 62; 3 J. J. Marsh., 491; 22 N. E. Rep., 952. Possession and part performance take the case out of the statute. Browne, Stat. Frauds, sec. 467; 30 Ark., 249. When either party has in good faith done anything in pursuance of a contract which has put him in a situation that a refusal on the part of the other would operate as a fraud, the courts decree specific performance all round. 40 Ark., 391; 1 id., 391; 19 id., 23; 95 U. S., 444; 19 Pa. St., 461; 19 N. J. Eq., 102. When services are rendered, not gratuitously, but upon faith of a verbal contract to convey land, equity will decree performance. 13 N. J. Eq., 246; 22 Pac., 550. This was not a gift, nor a promise to make an advancement without consideration. But it was a fair, just and equitable contract to do for a consideration now what nature would do in a few short years.

*Duval & Pitchford* in reply.

The verdict of a jury in chancery cases is only advisory, and not conclusive upon the chancellor. Thomps., Trials, sec. 2356; 85 Md., 217; 83 Mo., 651–7.

HEMINGWAY, J. This suit is founded on an alleged parol contract between the plaintiff on the one side, and Malinda Hinkle, his mother, and John Hinkle, his brother, on the other side, which it is claimed was made by John for himself and Malinda, and subsequently ratified by her.

By the contract as set out the latter parties promised the former party that, for a consideration named, the plaintiff should acquire the right to occupy and use a certain brick house in Van Buren and the lots upon which it is situate for the remainder of the life of the said Malinda; also the present enjoyment of his undivided interest in certain lands in which Malinda held a life estate, and also an interest in

a partnership business owned and conducted by the said John and Malinda. The alleged consideration for this agreement was, that the plaintiff, who resides and did business in Louisville, Ky., should change his residence to Van Buren, Ark., where the other parties resided, assist in the conduct and management of the business of said firm and in caring for the said Malinda.

The contract is positively asserted upon one side and as positively denied upon the other. The plaintiff does not contend that he was to acquire any interest of his brother John by the terms of the contract, except in the present use of the brick house; but he was only to acquire such present interest in the property as he would be entitled to if his mother were dead. The property acquired by him under the contract, as he states it, came therefore from the mother, and to sustain a recovery on account of it he must show not only that John made such a contract with him, but also that she ratified it.

Assuming without deciding that John so agreed, we have looked to see if the evidence disclosed a ratification by her; and we find that as to everything except the contract for the brick house, the evidence tending to show ratification is the same. We will therefore consider the case as to all the other property together, and first.

There is no proof that John ever wrote his mother the terms of contract before he and Martin left Louisville, and he says that he wrote her nothing about one. The only letter received from her by John, as to which there is any evidence, made no mention of the contract, according to Martin's own testimony. If she ratified it, it must have been after they arrived at Van Buren. Turning to the evidence, we find nothing to show that she ever knew of the contract. All the evidence bearing on it is in the testimony of Martin, who says that he had an understanding with her that he and John were to manage the business together. " She told him there was plenty for all; for him to go ahead, and that he should have his equal share." Just what this

statement would mean is uncertain, but we cannot find by the proof that it was made. Mrs Hinkle denies it, and her witnesses, who were present as Martin says, say they never heard such a promise. The burden is upon him to prove ratification, and the proof is against him.

But it is said there is some evidence that the contract was ratified, and that the verdict of the jury that it was is conclusive upon us. In chancery cases there is no right to the trial of any issue by a jury. A jury is called in by the court of its own motion and the verdict rendered is but advisory to, not binding, on the court. Thompson on Trials, sec. 2356, and cases cited.

*1. Practice in equity as to trial by jury.*

As the verdict and judgment upon this branch of the case is not supported by the evidence, we cannot sustain it.

As to the brick house and lots, we find that John promised Martin while in Louisville that he should have it for a home as soon as he arrived at Van Buren. It was then occupied, and John directed the tenant to move out and had the house made ready for Martin. On his arrival he stayed for a few days with Mrs. Hinkle and John and then moved to this house. He occupied it from that time until the institution of this suit, and no rent was ever spoken of, collected or charged. Mrs. Hinkle was in the same town, and, although very old and feeble, knew that Martin lived there. A son of his, whose testimony seems to be very fair and free from bias, testified that, very soon after Martin's arrival, she told him " he might have it " as " his own." We think this statement entirely consistent with the general purpose of the parties, as admitted on both sides, and with their conduct in reference to the house; and we find that such promise was made by John and ratified by Mrs. Hinkle. We are therefore of opinion that Martin is entitled by the terms of the contract to hold the house and lots without charge during the life of his mother.

*2. Part performance takes case out of statute of frauds.*

But the defendant pleads the statute of frauds, and the question is, if the statute applies, whether there has been

such performance as to take the case out of its operation. Martin did everything he agreed to do. He gave up his employment, changed his residence, assisted in caring for his mother and in managing and conducting the business, moved upon the land and expended money in improving it. If the statute could defeat his claim, it would become a means of fraud, not of its prevention. He did more than pay for, move on and improve the land; he surrendered his employment, and changed his home and avocation, and no return of the money expended would compensate him for annulling the contract.

The judgment in so far as it awarded any relief, except as to the brick house, was erroneous. It will be reversed and remanded with directions to enter a judgment vesting in plaintiff, without charge the title to the lots on which the brick house is situate for and during the life of Malinda Hinkle, and denying any further relief.