# CASES DETERMINED

IN THE

# SUPREME COURT OF ARKANSAS

## WILLIAMS v. WILLIAMS.

### Opinion delivered March 5, 1917.

CONTRACT FOR SUPPORT—AGREEMENT TO CONVEY LAND—STATUTE OF FRAUDS.—Deceased agreed to give certain lands to plaintiff if he would come to deceased's home, live with him and take care of him; plaintiff left his employment in a nearby town, and removed to deceased's home, and performed his part of the undertaking. *Held*, after deceased's death, that equity would enforce the agreement, although the same was only orally made.

Appeal from Prairie Chancery Court, Northern District; *John M. Elliott*, Chancellor; affirmed.

*Manning & Emerson*, for appellants.

1. The parol agreement, if any, made by appellee and deceased was within the statute of frauds. This is a question of fact, and it must appear by an affirmative preponderance of the evidence that the agreement was made. Appellee failed. Strict proof is required. 11 Enc. of Ev., 943; 39 Ark. 429; 44 *Id.* 340.

2. While this may be a question of fact, the chancellor's decision is persuasive merely, not final. The evidence is such that his findings should be reversed.

3. Appellee did not perform his part of the contract. He is barred by the statute of frauds. A parol contract must be established and its terms definitely established. Appellee must show by clear and convincing proof his performance and that he was put in possession in pursuance thereof. His right of recovery must be proven so conclusively that it could be maintained against deceased,

if alive. 81 Ark. 169; 82 *Id.* 43; 75 *Id.* 526; 173 S. W. 394; 11 Enc. Ev. 943, etc.

*C. B. & Cooper Thweatt,* for appellee.

The contract was proven clearly and by convincing testimony and the chancellor so found. The testimony shows clearly and definitely the terms of the contract; that appellee gave up his home and a good job and went and resided with his uncle and took care of him as long as he lived, under a promise that he would give him everything he had after his death. He took possession and made valuable improvements. The plea of the statute of fraud is not sustained. 105 Ark. 494; 102 *Id.* 30; 55 *Id.* 583.

McCULLOCH, C. J. Sanders Williams, an aged negro, who died in the latter part of the year 1913, owned and resided upon a small tract of farm land in Prairie County, Arkansas, and also owned several horses and mules and some cattle. He was seventy years of age when he died, and had been very feeble for several years, according to the testimony in the case, and was unable to do very much work in the cultivation of the crops or otherwise. He died unmarried and without issue. The plaintiff, Jake Williams, Jr., was a nephew of Sanders Williams, and after the latter's death he instituted this action in the chancery court of Prairie County against the heirs at law of Sanders Williams, alleging that in the month of February, 1911, said Sanders Williams entered into an oral agreement with him whereby he was to take care of said Sanders Williams during the remainder of his lifetime in consideration of which the latter was to convey to him said lands and personal property. The plaintiff alleged further that at the time the said agreement was entered into with his uncle he was residing at DeValls Bluff, where he had permanent and lucrative employment, and that in consideration of said agreement he gave up said employment and moved to his uncle's farm, and during the lifetime of the latter took care of him and made valuable improvements on the place. The relief

sought was the specific performance of the agreement on the part of Sanders Williams to convey to plaintiff said lands and personal property.

The heirs of said decedent, among whom was Jake Williams, Sr., the father of plaintiff, answered the complaint, and denied the allegations with respect to the agreement on the part of said decedent to convey said lands and personal property to the plaintiff, and also denied that the plaintiff had made any substantial improvements on the said farm. On the trial of the case the chancery court decreed in favor of the plaintiff for the specific performance of said agreement to convey the land. The personal property had been mortgaged by Sanders Williams and the mortgage debt remained unpaid, but the title to the personal property was decreed to be in plaintiff, subject to the said mortgage, and he was decreed the privilege of redeeming from the mortgage, and defendants have appealed to this court.

The testimony in the record is quite voluminous, and we find it unnecessary to review the same at length. Many witnesses testified concerning the physical and mental condition of Sanders Williams during the last few years of his life, and there is a conflict in the testimony, not only on that particular feature of the case, but also on the question whether or not the plaintiff lived with, Sanders Williams pursuant to an agreement on the part of the latter to convey the land and personal property to him, either by conveyance during his life or by last will and testament.

After consideration of the testimony in the case, we are of the opinion that it clearly establishes the fact that plaintiff went to live with his uncle under an agreement that the latter was to convey the property to him in consideration of care and attention to be bestowed during the latter's lifetime, and that the plaintiff occupied the premises pursuant to that agreement and made substantial improvements. The rule in such cases is that in order for a court of equity to grant relief in requiring specific performance of a contract the evidence must be clear and

satisfactory so as to be substantially beyond doubt. We think this rule has been fully met in the present case and the testimony is altogether convincing that Sanders Williams entered into such an agreement with the plaintiff, his nephew, and that the latter performed the agreement. There is indeed some doubt whether the agreement was that the old man was to convey the land to plaintiff during his lifetime or was to convey it by last will. We do not think it is necessary that the testimony should be free from conflict or variance on that issue, since it is fully established that the property was to be conveyed by some mode, and it is immaterial whether it was to be done by conveyance during the lifetime of the grantor or by last will and testament. The basis of the plaintiff's claim is that there was a contract whereby he was to get the property in consideration of his services rendered to his uncle, and it is entirely unimportant as to the particular method in which the property was to be conveyed. The proof having established the contract and a performance of its terms by the plaintiff, it follows that a court of equity should grant him relief. We need go no further than our own decisions in finding authority on this question. *Hinkle* v. *Hinkle,* 55 Ark. 583; *Naylor* v. *Shelton,* 102 Ark. 30; *Fred* v. *Asbury,* 105 Ark. 494. The law stated in the syllabus of the last case is peculiarly applicable to the facts of the present case and reads as follows: "Where intestate verbally agreed that, if plaintiffs would give up their employment, change their residence and take care of him for the rest of his life, he would leave them all of his property, real and personal, at his death, and plaintiffs complied therewith, their conduct was such a performance as would take the contract out of the statute of frauds."

In that case the elements forming the consideration were about the same as in the present case, except that one of the contracting parties removed to Arkansas from the State of Indiana for the purpose of performing the contract. It is urged that that element does not enter into

the present case, and that the change of residence in the present case was not a substantial one in that he did not remove from his State or county. The proof does show, however, in the present case that the plaintiff was enjoying lucrative employment, and was held in high esteem by his employer when he gave up his work in DeValls Bluff, and he did so with reluctance in order to go to live with his uncle and take care of him. In order to assume the obligations imposed upon him by the contract, he made an entire change of his surroundings and changed his occupation and place of residence. He gave his services to his uncle for more than two years before the latter's death, and continued in the performance of his contract until his obligation was fully discharged. The evidence shows, therefore, that the contract was made and that the plaintiff has earned the enjoyment of its fruits. His rights are not to be defeated because there may be some doubt as to the mode in which he was finally to secure the enjoyment, and we are of the opinion that the chancellor was justified from the evidence in decreeing the performance of the contract and in quieting the title of the plaintiff. The decree is, therefore, affirmed.