SPECK v. DODSON.

Opinion delivered December 3, 1928.

*Bruce Ivy* and *J. T. Coston,* for appellant.

*Aaron McMullin, R. H. Dudley* and *J. F. Gautney,* for appellee.

KIRBY, J. Appellee brought this suit against appellant, administrator, and the unknown heirs of Tom Mor-

ris, deceased, claiming ownership of the real and personal property belonging to Morris at the time of his death; alleging that in 1901 Morris, who was growing old and feeble, and who was the husband of his aunt, induced the plaintiff to change his residence from Mississippi and come to Arkansas and live with him, under the promise and agreement that, if appellee would do this, and take care of and assist in supporting and caring for Morris and his wife, appellee's aunt, he, Morris, would give him all the property that he might own at the time of his death. That appellee accepted the proposition, and moved to Arkansas, and continued to reside with and care for Morris and his wife during their lives. In 1902 Morris bought the land in controversy, then wild and unimproved, and moved on it in 1903. Appellee moved with the family, cleared and hired the land cleared and put in cultivation, and, during the time, taught school, and used his earnings for paying for clearing and putting the land in cultivation. That Morris died September 6, 1926, without issue and without heirs, after the death of his wife in May, 1926. The land was mortgaged to the Southern Loan and Abstract Company for $750, and part of the mortgage remained unpaid. Prayed that appellee be decreed to be the owner of the real and personal property of the estate, subject to the mortgage indebtedness, and that his title thereto be quieted as against said administrator and the unknown heirs of Morris. Also prayed an injunction to prevent the administrator from interfering with appellee in his possession of the property. An attorney was appointed to represent the unknown heirs. Appellant, administrator, answered, denying the allegations of the complaint.

The testimony is rather voluminous, and it is unnecessary to review it at length, but we find, after careful consideration, that it clearly establishes the fact that appellee went to live with his uncle, Tom Morris, the husband of his aunt, under an agreement that he would give him, in consideration of his living with them and taking care of himself and wife during their lifetime, all the property

which he owned at the time of his death; that appellee moved from his home in Mississippi to Arkansas, and took up his residence with Morris, and continued to live with and care for him and his wife throughout the remainder of their lives; that the land in controversy was purchased by Morris in 1902, was wild and unimproved at the time; that he moved with Morris from where he had been taking care of them on to this land, in 1903, and cleared and hired the land put in cultivation, teaching school part of the time, and using his earnings in paying for the improvements. Appellee married in 1912, and Morris told him to put his house wherever he wanted it, and to clear the land on the other side of the bayou, which was his.

Appellee testified that he was 50 years old; had resided in Mississippi County for 25 years; that Ester Morris, Tom Morris' wife, was his mother's sister, and he had known them all his life. That he had, at the invitation of Morris, come to Arkansas, after the death of his mother, and that Morris said to him, ''We are old folks,'' and, ''Seems like you might come and stay with us and live with us—we got no children, no one to take care of us, and we want you to live with us''; and ''If you will come, what is around us is yours; * * * we have no one else to have it.'' Morris had no kin people living. He stated that he married in 1912, and had lived with Morris and wife for eleven years before that. He taught school, attended to the stock, and did the cooking lots of times when they were ill. He looked after them, and after he was married his wife was with them every day, giving them care and attention, and during the latter part of their lives gave up his home and lived with them. He spent his own money in clearing the land, and after his marriage he paid rent to Morris, because that was all he had to live on. That he did not know that appellant was appointed administrator until after his appointment, and the personal property taken into possession by the administrator was worth four or five hundred dollars.

Many witnesses testified that Morris had told them that he had no heirs or kinfolks, and that Lewis Dodson, who had lived with and taken care of him and his wife, would get what property he had after his death. One witness said: "Dodson looked after Morris and wife as though they had been his father and mother, waited on them like they were children, and his wife was there all the time, and he was there before he went to school and after school was out."

From a decree for specific performance and quieting the title to the lands in appellee, this appeal is prosecuted.

Appellant insists that the decree is contrary to the weight of the evidence, but we cannot agree with this contention. The evidence is virtually undisputed that appellee came from another State to live with Tom Morris and his wife, aunt of appellee, at their invitation, and under an agreement that he should have what property they owned at the time of their death, and, pursuant to the contract and agreement, did live with, take care of and help support them throughout their lives. See *Williams* v. *Williams*, 128 Ark. 1, 193 S. W. 82.

It is true the witnesses for the defendant testified that Tom Morris had said to some of them that appellee was a relation of his wife, and, as he had no other heirs, he would inherit the property at his death, and one of the witnesses testified that when he asked "Uncle Tom," shortly before his death, what was going to become of his property, he replied "that Lewis thought he was going to get it, but he would show him about that;" and also that he had paid some rents on the land during the last years of Morris' life. He explained this fact, however, by saying that the rent was paid in order that Morris might have money enough to live on, as he had no means of support, except what was furnished by appellee under his agreement. There was nothing inconsistent in his payment of rent, under the circumstances, with appellee's claim of being entitled to the property under his oral contract for taking care of and supporting the decedent to

the time of his death. The property did not belong to appellee, nor was it agreed it should become his property until the death of Morris, the owner, whom he was bound to take care of during his life. The case is unlike *Walker* v. *Eller, ante,* p. 183.

Appellee, having performed his contract, was entitled, after decedent's death, to enforce the agreement, notwithstanding the same was orally made. *Hinkle* v. *Hinkle,* 55 Ark. 583, 18 S. W. 1049; *Fred* v. *Asbury,* 105 Ark. 494, 152 S. W. 155; *Williams* v. *Williams, supra.*

There being no error in the record, the decree is affirmed.