CROWELL *v.* PARKS.

4-7811 193 S. W. 2d 483

Opinion delivered February 25, 1946.

Rehearing denied April 22, 1946.

*Mark E. Woolsey,* for appellant.

*J. F. Quillin,* for appellee.

McHANEY, J. Mrs. Anna B. Phillips died testate in Mena, Polk county, Arkansas, on November 30, 1944. Her will which was probated December 20, 1944, left all her property to appellant, including lot 51 in Highland Addition to Mena.

Appellee brought this action against appellant and the four heirs at law of Mrs. Phillips, William, Balfour

and Waldron Ker and Mrs. Lothrop M. Weld, who are nephews and a niece of the testatrix, in which he alleged that during the year 1937 he entered into an oral agreement with the testatrix by which she agreed to devise or convey to him, at her death, the fee simple title to said lot 51 in consideration of services rendered and to be rendered by him to her during the remainder of her lifetime, "said services consisting of the management of her business affairs, the running of errands, looking after her when she was ill, and such other personal services as might be necessary." He alleged that, although he had fully performed said contract, she had failed to perform by executing a will or deed conveying said property to him. He prayed that the title to said property be decreed and quieted in him, and that appellant be dispossessed thereof.

Appellant answered with a general denial, and particularly denied that appellee had any kind of contract with the testatrix or that he performed any kind of services for her for which he was not fully paid. Three of the heirs at law were served with summons, but neither of them answered. As to William Ker the court found that he is in the military service, was not served with summons and did not enter his appearance in the action. His rights, if any, are not herein adjudicated.

Trial resulted in a decree for appellee sustaining the alleged oral contract to convey to him said lot, and quieting and confirming the title thereto in him. This appeal followed.

It has long been the rule in this court that a valid oral contract to make a will or a deed to land may be made, but that the testimony to establish such a contract must be clear, cogent, satisfactory and convincing. One of the latest cases so holding is *Jensen* v. *Housley, Admr.,* 207 Ark. 742, 182 S. W. 2d 758, where a number of our former cases are cited. Among the cases so cited is *Kranz* v. *Kranz,* 203 Ark. 1147, 158 S. W. 2d 926, in which we said, "it is not sufficient that he establish it (the oral contract) by a preponderance of the testimony,

but that he must go further and establish the contract by evidence so clear, satisfactory and convincing as to be substantially beyond a reasonable doubt." .

The parties here. are not in disagreement about the rule, but only as to whether the evidence is sufficient to measure up to it. We agree with appellant that it does not and that the learned trial court erred in holding that it does.

Appellee is a clerk in a grocery. store in Mena. As such he delivered groceries to the testatrix from his employer and perhaps from others. He got her mail at the post office and delivered that to her. He ran certain errands for her. He began doing this in 1937 and he says without any agreement until 1940, when she proposed to him that if he continued to look after her business and run her errands she would give him her property after her death; that he did continue to do so and accepted her proposal; that the errands he did for her increased after 1940, as she grew older; that during that time she gave him some books and paid him some money —at Christmas in 1939, $5, and $10 each at Christmas in 1941 and 1943. On cross-examination he was asked: "Q. What did you do besides running errands? A. That is all." He also said he cut some wood for her shortly before her death, but that appellant paid him for that after he asked her to, by check for $5.50.

Other witnesses testified to facts tending to corroborate appellee as to the services rendered by him and to statements made to them by her that she intended to leave the property to appellee, but no one testified that there was a contract or agreement between them to do so other than the appellee. On the other hand, a witness for appellant said that from April, 1937, to February, 1938, she lived in the cottage on testatrix's place and knew appellee was her grocery boy, but did not know of his performing other errands for her, but that testatrix told her about two or three years ago that she was paying appellee to get her mail, bring her groceries and other things for her, she said $10, but did not say whether it

was by the month or the year. A carpenter who did some work for testatrix shortly before her death, and was paid by her, testified she told him she was paying appellee $50 per year to look after the place. Another witness testified she told him she always paid appellee for what he did. In addition to this, the appellee admits she paid him certain amounts, from $20 to $25, but claims they were Christmas presents.

Considering the testimony for appellee alone, we think it very unsatisfactory and entirely insufficient under the rule stated to justify a decree for appellee in this case. In most of the cases, if not all of them, sustaining oral contracts to devise or convey lands upon performance of the consideration therefor, the plaintiffs have performed usually at sacrifices to themselves and performed services not easily compensated in money. For instance in our case of *Hinkle* v. *Hinkle,* 55 Ark. 583, 18 S. W. 1049, the plaintiff gave up his residence and employment in Louisville, Ky., moved to Van Buren, cared for his mother, managed the business, etc. See, also, *Fred* v. *Asbury,* 105 Ark. 494, 152 S. W. 155 and *Speck* v. *Dodson,* 178 Ark. 549, 11 S. W. 2d 456. In *Williams* v. *Williams,* 128 Ark. 1, 193 S. W. 82, it was said that the evidence ''clearly establishes the fact that plaintiff went to live with his uncle under an agreement that the latter was to convey the property to him in consideration of the care and attention to be bestowed during the latter's lifetime, and that plaintiff occupied the premises pursuant to that agreement and made substantial improvements,'' and further said, ''In order to assume the obligations imposed upon him by the contract, he made an entire change in his surroundings and changed his occupation and place of residence.'' In the Speck-Dodson case, similar facts were shown relative to plaintiff's change of residence and occupation.

Here, there was no such change in appellee's residence and occupation. He continued in his old job of grocery clerk and delivery boy, and there was no change in the character of services rendered by him to the testatrix. Nor are the facts in the case of *Naylor* v. *Shelton,*

102 Ark. 30, 143 S. W. 117, Ann. Cas. 1914A, 394, cited and relied on by appellee, comparable to the facts here. There the father, Trundle, lived with his daughter, Mrs. Shelton, and agreed to convey certain property to her by will or deed effective at his death, in consideration that she and her husband would take care of him the rest of his life. He executed a will giving the property to her, but, a few months before his death, he got the will and destroyed it. Mrs. Shelton performed the contract by taking care of her father until his death.

We are, therefore, of the opinion that the evidence was insufficient under the clear and convincing rule to establish a contract to convey; and that the decree should be and is reversed and the cause remanded with directions to dismiss the complaint for want of equity.