JANES, EXECUTOR *v*. ROGERS.

5-481

271 S. W. 2d 930

Opinion delivered October 25, 1954.

*R. Julian Glover,* for appellant.

*Richard M. Ryan* and *C. T. Cotham,* for appellee.

Minor W. Millwee, Justice. Appellees, Edgar and Elvia Rogers, are the sons of J. D. Rogers, deceased, by his first marriage. They instituted this suit to have the probated will of Ella Rogers, deceased, their stepmother, set aside on the ground that it constituted a fraud upon the court and appellees, and a breach of a contract pursuant to which the said J. D. Rogers and Ella Rogers made valid mutual and reciprocal wills. Appellants, Lawrence and J. D. Janes, are the sons of Ella Rogers by a previous marriage. The suit is against both as sole heirs of Ella Rogers, deceased, and beneficiaries under said probated will, and against Lawrence Janes as executor of said will.

The court found for appellees, ordered revocation and cancellation of the purported will last made by Ella Rogers and directed that the reciprocal wills previously made by J. D. and Ella Rogers be admitted to probate.

There is no dispute in the material facts. When J. D. and Ella Rogers were married in 1930, each had two sons by a former marriage and no children were born of their own marriage. J. D. Rogers was employed in a furniture store and the parties accumulated certain real and personal properties through their joint efforts. In 1944 they purchased a home in Hot Springs which was also an apartment building, taking title by the entirety. There is evidence that other real estate was acquired but it was not definitely shown whether title was taken in the name of the husband alone or by the entirety. Shortly prior to January 25, 1945, Mr. and Mrs. Rogers went to the office of a Hot Springs attorney who was well

acquainted with Mrs. Rogers. They told him about their children, the nature of their properties which they wanted distributed equally to the four sons upon the death of the surviving parent who would be allowed to use the properties "to live on." On cross-examination the attorney stated quite positively that Mr. and Mrs. Rogers had an "understanding or agreement" as to the disposition of their properties. After full consideration of their wishes and intentions he advised the execution of reciprocal wills to effectuate the agreement.

On January 25, 1945, Mr. and Mrs. Rogers came back to the attorney's office where they executed separate identical and reciprocal wills in which each devised and bequeathed all his or her property to the other for life with full power of disposition during the life of the survivor and remainder over to the four sons, share and share alike, and in the event of the decease of either son, then to the heirs of his body. At the time of the execution of the wills the attorney advised that only the will of the survivor was to be probated. There was no direct reference in the wills to the contract to make them. Also upon his advice, the wills were lodged in the office of the county and probate clerk for safekeeping on the date of execution. J. D. Rogers died July 14, 1947, and his will was never offered for probate. On July 18, 1951, Ella Rogers withdrew the reciprocal wills from the clerk's office and the following day executed another will under the terms of which her two sons, the appellants, were made principal beneficiaries contrary to provisions of the reciprocal wills. Ella Rogers died February 16, 1953, and appellant Lawrence Janes, as executor, proceeded to probate the will executed by his mother in 1951.

Appellee, Elvia Rogers, testified, without objection, that he was called to the home of his father and stepmother shortly after the execution of the reciprocal wills in 1945 and was fully informed by both parents of the terms of the two wills which had been drawn "to protect each of their children." It was then and there agreed to be a fair way to dispose of their properties remaining upon the death of the surviving parent. Neither appellee

had any knowledge of the withdrawal of the reciprocal wills or the subsequent execution of the second will by their stepmother until notified by the attorney representing the appellant-executor after said will was offered for probate in 1953. They then instituted the present suit.

The principal contention for reversal is that the proof is insufficient to establish a valid contract to make reciprocal wills. In considering this contention we deem it appropriate to notice certain general principles applicable to a proper solution of the issues. We have repeatedly held that a valid oral contract to devise or convey real estate may be made, which is enforceable in equity. *Williams* v. *Williams,* 128 Ark. 1, 193 S. W. 82; *Speck* v. *Dodson,* 178 Ark. 549, 11 S. W. 2d 456. We have also held that the proof to establish such contract must be clear and convincing. *Crews* v. *Crews,* 212 Ark. 734, 207 S. W. 2d 606. The same degree of proof is required to establish a contract for the execution of wills containing reciprocal bequests of a life estate to the surviving testator with remainder to third persons designated by the contract. 57 Am. Jur., Wills, Sec. 728.

It is also well settled that a will is generally ambulatory until the death of the testator, and that mutual or reciprocal wills, may be revoked at pleasure unless founded on, or embodying, a binding contract. 69 C. J., Wills, Sec. 2719.

The general rule is that a contract for reciprocal wills need not be expressed, but may arise by implication from circumstances which make it clear that the parties had such wills in mind, that they intended to carry out their plans for testamentary disposition thereby, and that each acquiesced in the understanding of the other. 57 Am. Jur., Wills, Sec. 694. While there is considerable conflict in the decisions, we think the rule followed by the weight of authority may be stated as follows: The fact that the parties have concurrently executed separate wills, reciprocal in terms, is not sufficient, of itself, to show that the parties had entered into a contract to make

such wills; but the terms of such wills afford some evidence of the contractual relation and, when read in connection with other evidence which tends to show the execution of the contract, may establish that fact. Page on Wills, Sec. 1710; Annotation on Joint, Mutual and Reciprocal Wills, 169 A. L. R. 9.

Although it is advisable from the standpoint of good draftmanship that reciprocal wills embody a reference to a contract for their execution, it is not essential to the establishment of such a contract. See 57 Am. Jur., Wills, Sec. 733, where the author further states: "An agreement to execute wills containing reciprocal bequests and provisions for the benefit of third persons may result by implication from the wills themselves, the relation of the parties, and other circumstances surrounding the parties, and the execution of the wills, all considered in combination."

When the uncontradicted evidence is considered along with all the circumstances in the case at bar, we hold it sufficient to show that J. D. Rogers and his wife Ella made a binding contract to execute reciprocal wills which were made in compliance therewith. It is certain and clear that both parties intended and agreed that their sons should share equally in whatever property was left by the surviving parent and they left it to their attorney to prepare whatever papers were necessary to carry out their wishes and accomplish the common purpose. According to the attorney's testimony, he prepared the reciprocal wills in conformity with their desires and pursuant to their understanding or agreement.

The case of *Schramm* v. *Burkhart*, 137 Or. 208, 2 P. 2d 14, involved facts similar to those in the instant case. In upholding and enforcing the oral contract in that case the court stated: "It is an established rule that equity will not allow one person to receive advantage under a contract and then refuse to perform his part of the agreement, and that, where mutual wills are the result of a contract between the parties making them, which could not be rescinded without the consent of both, and one of

them has died and his part of the contract has been carried into execution, equity will not permit the other to violate the agreement, but will enforce the contract by declaring the executor, devisee, or other person coming into possession of the property which was the subject of the contract to be trustee for those who would have been benefited had the contract been performed.'' See also, *Lawrence* v. *Ashba*, 115 Ind. App. 485, 59 N. E. 2d 568, where the facts are almost identical with those in the instant case. So here, equity will not permit the wife to receive advantages under the contract, which was fully performed by her husband, and then breach the contract in violation of her solemn obligations and thereby defeat and defraud her deceased husband and these appellees.

Appellants also argue that since the property held by the entirety went to Ella Rogers upon her husband's death, he had no interest which could be devised by his will. It is true that Mrs. Rogers took title to such real estate by operation of law and not by the will but this does not mean that the contract to make the will could not operate upon the real estate so acquired by her. We concur in the conclusion of other courts to the effect that a contract between husband and wife like that involved here is applicable to property held by the spouses in an estate by the entirety, even though it would not pass under the will of either spouse but would devolve on the surviving spouse by operation of law. *Popejoy* v. *Peters*, 173 Tenn. 484, 121 S. W. 2d 538; *Lawrence* v. *Ashba*, *supra;* 57 Am. Jur., Wills, Sec. 702.

Appellants also contend that the contract is unenforceable because within the statute of frauds (Ark. Stats. Sec. 38-101). It is urged that the contract being oral and not evidenced by a written memorandum is invalid. It is true that oral contract to devise real property are invalid unless there is such part performance as will take the case out of the statute of frauds. Some courts hold the formal nature of reciprocal wills sufficient memorandum to satisfy the statute. We think the better rule is stated, as follows, by the Annotator in 169 A. L. R., *supra,* at page 44: ''If two parties verbally agree, each

in consideration of the other doing likewise, to make their wills disposing of their properties in a specified manner, and one dies leaving a will which complies with the contract, and the survivor accepts benefits under the will, noncompliance with the agreement by the survivor would operate as a fraud which equity will prevent, and in such a case the acts done are a sufficient part performance to take the case out of the statute of frauds or to estop the survivor to plead the statute.'' See also, 69 C. J., *supra,* Sec. 2728.

We hold there has been sufficient part performance in this case to remove it from the bar of the statute. Here the husband died leaving his will in full compliance with the contract. The reciprocal wills were deposited by the parties with the county clerk where they remained for several years after his death when Mrs. Rogers withdrew, and attempted to revoke, them without notice to **appellees.** It also appears that she continued to occupy and collect rentals from the apartment house property involved in the contract and wills and to otherwise accept benefit thereunder for several years after his death. To sanction a violation by her of the irrevocable contract in the circumstances would amount to the perpetration of a fraud under the terms of a statute designed to prevent and protect against fraud. See *Schramm* v. *Burkhart, supra; West* v. *Sims,* 153 Kan. 248, 109 P. 2d 479; *Notten* v. *Kensing,* 3 Cal. 2d 469, 45 P. 198; *Carmichael* v. *Carmichael,* 72 Mich. 76, 40 N. W. 173; *Taylor* v. *Wait,* 140 Or. 680, 14 P. 2d 283.

Appellants are correct in their final contention that appellees' proper remedy in a court of equity is by specific performance of the contract to execute the wills rather than a probation of the mutual wills. We have frequently held that equity has jurisdiction to specifically enforce a contract to make a will. *Schwegman* v. *Richards,* 184 Ark. 968, 43 S. W. 2d 1088. It is also well settled that such contracts made by a decedent may be enforced against his personal representatives, heirs, or devisees. 81 C. J. S., Specific Performance, Sec. 28a. In determining the nature of the relief or remedy to be

granted, the Chancellor was confronted with a difficult problem and one that has produced a variety of conflicting decisions. While the appellees prayed, and the court granted, the wrong remedy, the case will not be reversed on that account. However, the decree will be modified and the cause remanded with directions to decree specific performance of the contract. By this we mean that appellants, as sole heirs of Ella Rogers and devisees under her purported will, will be directed to transfer to appellees their share of the property in accordance with the contract. See Atkinson on Wills, Sec. 68, p. 172.

JUSTICE GEORGE ROSE SMITH, dissents.

GEORGE ROSE SMITH, J., dissenting. In my opinion the evidence is insufficient to take this oral contract out of the statute of frauds. The majority hold that since Mrs. Rogers accepted benefits under her husband's will there was sufficient part performance of the parol agreement. With this holding I disagree. All the property seems to have been held by Mr. and Mrs. Rogers as tenants by the entirety; or, to say the least, the appellees had the burden of proof and failed to show that it was not so held. The most direct evidence on this point is the testimony of their witness Mitchell, who stated that everything had been acquired during the marriage and was held jointly.

The property being held by the entirety, Mrs. Rogers was obviously not accepting benefits under her husband's will when she continued in possession and collected the rents; she was simply exercising her rights as owner of the fee simple title. Mr. and Mrs. Rogers must be presumed to have known the law. They must be taken to have known that the will of the spouse first to die would be completely ineffective (a fact which their attorney in substance explained to them), and that there would be only a moral, not a legal duty on the part of the survivor to carry out the oral understanding. Mrs. Rogers' failure to perform her promise was doubtless reprehensible, but it did not give rise to any cause of action on the part of the appellees.