Alma V. STEELE, Individually and as Executrix of the Estate of Charles F. Steele, Deceased, Appellant,

v.

Lelia M. McCARGO, Appellee.

No. 16033.

United States Court of Appeals Eighth Circuit.

Nov. 10, 1958.

---

1. See Filipek v. Moore-McCormack Lines, 2 Cir., 1958, 258 F.2d 734, 737 reported since the opinion in this case was filed.

Oliver M. Clegg, Magnolia, Ark. (Keith, Clegg & Eckert, Magnolia, Ark., was on the brief), for appellant.

William F. Denman, Jr., Prescott, Ark. (William F. Denman, Prescott, Ark., was with him on the brief), for appellee.

Before SANBORN, WOODROUGH and VOGEL, Circuit Judges.

VOGEL, Circuit Judge.

Lelia M. McCargo, plaintiff-appellee, brought this action against the defendant-appellant, Alma V. Steele, individually and as executrix of the estate of Charles F. Steele, deceased, seeking specific performance of a contract between Mrs. McCargo and Charles F. Steele under which Mrs. McCargo maintained she was entitled to an undivided one-fourth interest in the real and personal property which the deceased owned at the time of his death located in Nevada County, Arkansas, including certain mineral leases and royalties. Diversity of citizenship and the requisite amount make for federal court jurisdiction. The parties will be referred to as they were in the lower court.

The dispute arises out of a written contract entered into on March 15, 1954, between the plaintiff and Charles F. Steele, since deceased. No issue is presented as to the execution of the contract by the plaintiff and by Mr. Steele. In substance, it provided that in consideration of services to be performed by the plaintiff as a "stenographer and assistant business manager", Steele would "assign over to her an undivided ¼th interest in and to all property, both real and personal of which I may die seized and possessed, including * * *"; further, that " * * * in the event of the death of the party of the first part (Steele) before the proper assignments above mentioned have been executed, then this contract and agreement shall serve as an

assignment to an undivided ¼th interest in and to all properties of which I may die seized and possessed in Nevada County, Arkansas." It further provided that in the event of the death of the plaintiff before the death of Mr. Steele that he would pay over to the plaintiff's daughter the sum of $25,000.00 in full settlement of any claim on the part of the plaintiff. The contract is set forth in full below.[1]

Due to the provisions of the Arkansas "Dead Man's Statute", Ark.Const., 1874, Schedule, Section 2,[2] the trial court did not allow either the plaintiff or the de-

1. "This contract and agreement made and entered into this 15th day of March, 1954, by and between Charles F. Steele, Rosston, Arkansas, hereinafter called party of the first part, and Lelia M. Mc-Cargo, Prescott, Arkansas, hereinafter called party of the second part,
WITNESSETH:
That I, Charles F. Steele, am in very ill health, and doctors have told me that I cannot work and have a very short time to live and I find it necessary to have someone help me look after my affairs, therefore,
I, Charles F. Steele, party of the first part, for and in consideration of the mutual promises of the parties hereto, and for services performed in the past for me by party of the second part, and for services to be performed in the future, do hereby agree to employ, and by these presents do employ the party of the second part to work for me as stenographer and assistant business manager for so long as I may live, and for these services I agree to assign over to her an undivided ¼th interest in and to all property, both real and personal of which I may die seized and possessed, including minerals, leases, royalty, over-riding royalties, etc., in Nevada County, Arkansas, and agree that until the proper assignments are executed over to her, to pay her gas and oil expenses made in taking care of my interests.
And I, Lelia M. McCargo, party of the second part, on my part, for the above consideration, do hereby agree to work for the party of the first part as stenographer and agree to assist him in taking care of his business interests for so long as he may live, to the very best of my ability to so do.
It is further agreed by and between the parties hereto that the party of the second part shall, at the death of the party of the first part, continue to advise and assist the heirs, successors or assigns, to the best of her ability, in seeing after the estate of said party of the first part, for a reasonable salary to be agreed upon. It Is Further Agreed And Understood By And Between The Parties Hereto, that should it be necessary to employ legal assistance at any time to assist in the affairs of the estate, that party of the second part shall employ a firm of lawyers of her own choosing, Denman & Denman, of Prescott, Arkansas, the fee to be paid out of the estate, and in the event said firm be not available, party of the second part shall employ some other firm of her own choosing.
It Is Further Distinctly Understood And Agreed by and between the parties hereto that this contract and agreement is to continue from month to month and year to year until terminated by death.
It Is Further Understood And Agreed that in the event of the death of the party of the first part before the proper assignments above mentioned have been executed, then this contract and agreement shall serve as an assignment to an undivided ¼th interest in and to all properties of which I may die seized and possessed in Nevada County, Arkansas.
It Is Further Understood And Agreed By And Between The Parties Hereto, that in the event that the death of the party of the second part should occur before the death of the party of the first part, and before said assignment above mentioned has been executed, then in that event, party of the first part, hereby agrees that he will pay over to Nelle McCargo Johnson, daughter of the party of the second part, the sum of $25,000.00 in full settlement of any claim party of the second part may have against party of the first part.
It Is Further Agreed By And Between The Parties Hereto, that this contract and agreement shall be binding upon the heirs and assigns of both parties.
Witness Our Hands and seals this 15th day of March, 1954.
March 15, 1954
/s/ Charles F. Steele
/s/ Lelia M. McCargo"

2. Ark.Const., 1874, Schedule, Section 2, insofar as here pertinent, reads as follows: " * * * that in actions by or against executors, administrators, or guardians in which judgment may be rendered for or against them, neither party shall be allowed to testify against the other as to any transactions with or statements of the testator, intestate or ward, unless called to testify thereto by the opposite party * * *."

fendant to testify herein. After hearing all of the other witnesses, the trial court concluded, 160 F.Supp. 7, 24:

"* * * that the contract in suit was and is valid and subject to specific enforcement, that the plaintiff fully performed her obligations under it, that there was no failure of consideration, rescission or abandonment thereof, and that the plaintiff has not been guilty of any laches, and is entitled to the relief which she seeks."

The facts, although somewhat in conflict, are essentially these: Charles F. Steele had lived for many years in the small community of Waterloo, Arkansas. During much of this time he was engaged in the oil and gas leasing business. This work required considerable correspondence and the preparation of legal papers —mineral deeds, oil and gas leases, royalty contracts, etc. In these activities he was represented by the law firm of Denman and Denman. The plaintiff had been employed by the latter as secretary for many years. The record bears out that Mr. Steele was seen frequently in the Denman office at the plaintiff's desk where it was presumed she was doing work for him. One witness testified that she had gone with Mrs. McCargo to the home of Mr. Steele on numerous occasions and would wait outside three or four hours at a time while Mrs. McCargo worked for Mr. Steele.

In his later years Mr. Steele was in poor health. This he acknowledges in the preface of the "contract agreement", the subject of the controversy herein. About six weeks after executing the contract, on April 26, 1954, he executed a "Last Will and Testament". In this will he devised his residuary estate to his sister, Alma V. Steele, the defendant herein, who was also made sole executrix of this instrument.

Mr. Steele died on January 24, 1956, without having executed any assignments in favor of the plaintiff but on two separate occasions less than a month prior to his death in the presence of different witnesses, persons of substance whom the trial court found to be entirely credible, reaffirmed or, in effect, republished the contract between him and the plaintiff herein.

Mr. Steele's will was admitted to probate some time in the month following his death, but it was not until three or four months after his death that the plaintiff gave notice and evidence of her claim against the estate. The plaintiff's claim was formally filed in Probate Court, Nevada County, Arkansas, July 26, 1956, which was within the statutory period. Upon defendant's refusal to pay or recognize the claim, plaintiff brought suit in federal court for specific performance of the contract agreement. From the ruling referred to, the defendant appeals.

The defendant contends here that the court erred in construing the instrument in suit as a contract to make a will. With reference to the document in question, the trial court stated, 160 F.Supp. 7, 15:

"We are of the opinion that when this instrument is read in its entirety, it should not be construed as a present conveyance or as an attempted will, but, rather, as an executory contract contemplating performance by both parties during the lifetime of both, although the fruits that the plaintiff would derive from her performance could not be ascertained until Mr. Steele's death, should she survive him.

\*    \*    \*    \*    \*    \*

"That agreement, although inartistically drawn, amounts, in our estimation, to an agreement by the deceased to make a will devising and bequeathing to the plaintiff, should she survive him, the interest in his property for which she contracted."

The trial court placed great reliance upon the much cited case of the Supreme Court of Arkansas, Williams v. Williams, 1917, 128 Ark. 1, 193 S.W. 82. While that case dealt with an *oral* contract to "convey" property in consideration of care and maintenance and the instant case involves a written contract to "assign" property in consideration of services, we

think that difference of no materiality and that the principles of the Williams case are applicable to this one.

In the Williams case, an elderly man had entered into an oral agreement with his nephew whereby the nephew was to take care of him during the remainder of his lifetime, in consideration of which he was to "convey" to his nephew his lands and personal property. The nephew performed the intended services during the lifetime of his uncle and upon his uncle's death sought specific performance of the agreement to convey to him the lands and personal property. In sustaining the granting of specific performance, the Supreme Court of Arkansas stated, at page 83 of 193 S.W.:

"The rule in such cases is that in order for a court of equity to grant relief in requiring specific performance of a contract the evidence must be clear and satisfactory so as to be substantially beyond doubt. * * * *There is indeed some doubt whether the agreement was that the old man was to convey the land to plaintiff during his lifetime, or was to convey it by last will.* We do not think it is necessary that the testimony should be free from conflict or variance on that issue, since it is fully established that the property was to be conveyed by some mode, and *it is immaterial whether it was to be done by conveyance during the lifetime of the grantor or by last will and testament.* The basis of the plaintiff's claim is that there was a contract whereby he was to get the property in consideration of his services rendered to his uncle, and *it is entirely unimportant as to the particular method in which the property was to be conveyed.*

"The proof having established the contract and a performance of its terms by the plaintiff, it follows that the court of equity should grant him relief. We need go no further than our own decisions in finding authority on this question. Hinkle v. Hinkle, 55 Ark. 583, 18 S.W. 1049; Naylor v. Shelton, 102 Ark. 30, 143 S.W. 117, Ann.Cas.1914A, 394; Fred v. Asbury, 105 Ark. 494, 152 S.W. 155. The law stated in the syllabus of the last case is peculiarly applicable to the facts of the present case, and reads as follows:

" 'Where intestate verbally agreed that, if plaintiffs would give up their employment, change their residence, and take care of him for the rest of his life, he would leave them all of his property, real and personal, at his death, and plaintiffs complied therewith, their conduct was such a performance as would take the contract out of the statute of frauds.'

* * * * * *

" * * * The evidence shows, therefore, that the contract was made, and that the plaintiff has earned the enjoyment of its fruits. *His rights are not to be defeated because there may be some doubt as to the mode in which he was finally to secure the enjoyment, * * *.*" (Emphasis supplied.)

Defendant attempts to distinguish the Williams case as follows:

"The trouble with Appellee's and the Trial Court's reliance upon the Williams case is that the Court there found 'some doubt' as to the mode in which 'he was finally to secure the enjoyment'. In this case there is no doubt as to the mode of conveyance contemplated. Both Appellee in her complaint and the Trial Court in its opinion recognize that the parties to the contract contemplated an instrument to be executed by Mr. Steele other than a will. This position of Appellee and the Trial Court is conclusively sustained by the simple fact that the word 'will', while obviously well known to both parties to the contract, was not used."

We think the defendant here cannot so evade the force of the Williams opinion. As the able trial judge points out, the agreement was "inartistically drawn". He determined that an ambiguity existed

—that the contract was susceptible of more than one meaning, and with that we agree. This court said in United States v. Northern Pacific Ry. Co., 8 Cir., 1951, 188 F.2d 277, 280:

"The question as to whether an ambiguity exists in a contract is to be determined by the court as a matter of law. 17 C.J.S. Contracts § 617; Whiting Stoker Company v. Chicago Stoker Company, 7 Cir., 171 F.2d 248; Golden Gate Bridge & Highway District of California v. United States, 9 Cir., 125 F.2d 872."

Having so determined and we think rightly, the matter became an issue of fact and, as Judge Thomas, speaking for this court in Floyd v. Ring Construction Corp., 8 Cir., 1948, 165 F.2d 125, 129, said:

"The law is 'that the terms of a contract, if it be ambiguous, are matters of fact to be determined in the same manner as other facts; by the jury, if it be a jury case, or by the court, if the jury be waived; while the construction of the contract and its legal effect are questions of law for the court.' Pike Rapids Power Co. v. Minneapolis, St. P. & S. S. M. R. Co., 8 Cir., 99 F.2d 902, 916; National Surety Corporation of New York v. Ellison, 8 Cir., 88 F.2d 399, 402; State v. Fellows, 98 Minn. 179, 187, 107 N.W. 542, 108 N.W. 825; Bell Lumber Co. v. Seaman, 136 Minn. 106, 161 N.W. 383, 384; Lucas v. Ganley Bros., 166 Minn. 7, 206 N.W. 934, 936."

See also Severson v. Fleck, 8 Cir., 1958, 251 F.2d 920, 923. In discussing this particular question, the trial court, at page 16 of 160 F.Supp., very aptly said:

"Had the contract referred to a 'will' rather than to 'assignments,' and had Mr. Steele undertaken to 'devise and bequeath' an interest in his property to the deceased (sic) rather than to 'assign' such interest to her, the argument now under consideration could not have been seriously advanced; and to attach con-

trolling importance to the particular words used would be, in this instance, to elevate form over substance, which should not be done."

The method by which Mr. Steele would assign the property to the plaintiff was not clear but certainly the fact that twice within less than a month before his death he "republished" the contract is most convincing, if not conclusive, of his intention that in consideration of past services and services to be rendered, which were actually performed, that the plaintiff should receive *at the time of his death* a one-fourth interest in his property in Nevada County, Arkansas. If that objective be clear, and it is, then the uncertainty of the method of accomplishment is, as in the Williams case, "immaterial".

■ The principle of the Williams case is to the effect that if a plaintiff furnishes services in consideration of the intestate's agreement to leave the plaintiff property at his death, and the services are performed, then the contract is outside the statute of frauds, and specific performance should be granted and. " * * * it is entirely unimportant as to the particular method in which the property was to be conveyed."

That principle has been continuously reiterated by the Supreme Court of Arkansas. Schwegman v. Richards, 1931, 184 Ark. 968, 43 S.W.2d 1088, 1090:

"It has been frequently held that, upon the showing of the performance of such an agreement, the persons performing it are entitled to a specific performance of same against the heirs of the decedents. Hinkle v. Hinkle, 55 Ark. 583, 18 S.W. 1049; Naylor v. Shelton, 102 Ark. 30, 143 S.W. 117, Ann.Cas.1914A, 394; Fred v. Asbury, 105 Ark. 494, 152 S.W. 155; Williams v. Williams, 128 Ark. 1, 193 S.W. 82; Speck v. Dodson, 178 Ark. 549, 11 S.W.2d 456."

Jensen v. Housley, 1944, 207 Ark. 742, 182 S.W.2d 758, 759:

"The validity of an oral contract to make a will has long been recog-

888888

nized and such contracts have often been enforced by the courts. Hinkle v. Hinkle, 55 Ark. 583, 18 S.W. 1049; Naylor v. Shelton, 102 Ark. 30, 143 S.W. 117, Ann.Cas.1914A, 394; Fred v. Asbury, 105 Ark. 494, 152 S.W. 155; Williams v. Williams, 128 Ark. 1, 193 S.W. 82; Speck v. Dodson, 178 Ark. 549, 11 S.W.2d 456; Schwegman v. Richards, 184 Ark. 968, 43 S.W.2d 1088."

Hall v. Milham, 1955, 225 Ark. 597, 284 S.W.2d 108, 110:

"The validity of an oral contract to make a will has long been recognized and such contracts have often been enforced by the courts. As in other contracts, a promise to make a will cannot be enforced without consideration."

Hill v. Talbert, 1946, 210 Ark. 866, 197 S.W.2d 942, 943:

"Now the law is that contracts of this character must be proved by testimony that is clear, decisive and convincing. Williams v. Williams, 128 Ark. 1, 193 S.W. 82; Walker v. Eller, 178 Ark. 183, 10 S.W.2d 14.

\* \* \* \* \* \*

"To prevail Ray must not only prove that he had such a contract, but he must also show that he performed it, \* \* \*."

■ We believe the principle of the Williams case was correctly applied by the trial court to the issues herein. The trial court here found that the ultimate intention of the parties was for the plaintiff to receive one-fourth of the deceased's estate in exchange for services which were actually rendered, that accordingly consideration passed, that the manner in which the contract was to be executed insofar as Mr. Steele was concerned was ambiguous, that the ambiguous contract should be construed as one to make a will devising and bequeathing a one-fourth interest in such property as he owned at the time of his death. These are acceptable conclusions which are well sup-ported in the record. We find no error therein.

■ Defendant further contends here that the trial court erred in finding that there had been no abandonment or failure of consideration; that the plaintiff was not guilty of laches; that the contract did not lack mutuality during the lifetime of Mr. Steele; and that it was not fatally indefinite and unjust, unfair or inequitable. These are fact issues. Such questions are to be resolved by the trial court and upon review by this court the "Findings of fact shall not be set aside unless clearly erroneous, \* \* \*." Rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C.A. In Cleo Syrup Corp. v. Coca-Cola Co., 8 Cir., 1943, 139 F.2d 416, at page 418, 150 A.L.R. 1056, certiorari denied 321 U.S. 781, 64 S.Ct. 638, 88 L.Ed. 1074, this court said:

"In a non-jury case, this Court may not set aside a finding of fact of a trial court unless there is no substantial evidence to sustain it, unless it is against the clear weight of the evidence, or unless it was induced by an erroneous view of the law. Aetna Life Ins. Co. v. Kepler, 8 Cir., 116 F.2d 1, 4, 5; Gasifier Mfg. Co. v. General Motors Corporation, 8 Cir., 138 F.2d 197, 199; Travelers Mutual Casualty Co. v. Rector, supra [8 Cir., 138 F.2d 396]. \* \* \*."

We have carefully examined the record in the light of the contentions of the defendant and must conclude that the trial court's findings are based on substantial evidence, are not clearly erroneous, or induced by an erroneous view of the law and accordingly may not be set aside. In his exhaustive opinion, the able trial judge has with meticulous care commented on each of the defendant's contentions. It would serve no good purpose for us to reiterate the trial court's statements, which, as we have stated, are published and available, 160 F.Supp. 7. The judgment appealed from is affirmed.