EVANS *v.* WEISE.

5-2528                                              350 S. W. 2d 616

Opinion delivered November 6, 1961.

*Cole & Scott,* for appellant.

*O. Wendell Hall, Jr.* and *Joe E. Purcell,* for appellee.

NEILL BOHLINGER, Associate Justice.   This is an appeal from the Saline Chancery Court from a judgment against the appellants and their bondsman in favor of the appellees for $38,600.00 damages.

138

On March 28, 1955 the appellant, J. M. Evans, sold to the appellees an automobile-truck-farm equipment business which the appellant was operating in Saline County and which the appellees purchased by making a down payment and executing a note in the sum of $43,965.60 for the balance of the purchase price which note was secured by a mortgage on 'all parts and accessories, all furniture and fixtures, all accounts receivable and all notes receivable, all used trucks or rolling stock, all used automobiles, all new and used farm machinery which were a part of the business which was known as Saline County Motors.'

The note given by appellees was payable at the rate of $366.38 per month and appellees met all monthly payments and in addition, rented the building from appellant wherein the Saline County Motors was housed for a sum of $300.00 per month which was duly paid.

The business of the appellees on June 1, 1960 appears to have been in financial difficulties and the appellant and appellees discussed the matter of liquidating the business and paying the creditors, including the appellant who claimed a balance of $21,250.04 on the note and mortgage given by appellees in the purchase of the business.

The matter of liquidating appears to have been discussed by the partner appellees and on June 2, 1960 they advised their suppliers, Chrysler Corporation and The International Harvester Company, of their intention to cancel their dealership contracts and proceeded further with the liquidation of the business by disposing of assets, including accounts receivable which the appellant claims were covered by his mortgage.

Finding that the proceeds from the disposal of the assets were not finding their way into the bank, the appellant, on June 13, 1960, asked for and obtained a temporary restraining order to conserve the assets of the partnership. On June 15, 1960, the appellees moved to dissolve the temporary injunction and after a hearing

on June 18, 1960, the chancellor granted the prayer of the appellees and dissolved the injunction.

The appellees moved in the chancery court for the impaneling of a jury to assess the damages to which they felt they were entitled by reason of the temporary injunction. On December 8, 1960, the chancellor impaneled a jury for that purpose and after hearing testimony, the jury found for the appellees, E. K. Weise and James Westbrook, in the sum of $38,600.00 damages against the appellant. The chancellor adopted the finding of the jury and entered a decree pursuant to such jury finding, awarding damages to the appellees against appellant in the sum of $38,600.00.

To reverse that decree, the appellant presents among others, the following point:

"Point 1—The Chancery Decree Awarding Judgment of $38,600.00 was Error

1-A—A Question of Fact, to be Tried De Novo, is Presented on Appeal

1-B—The Damages Awarded are not Supported by any Substantial Evidence

1-C—The Damages Awarded are Grossly Excessive".

With appellants' Point 1, we agree and the case is here and now considered *de novo*. § 32-307 Ark. Stats. (1947) Anno., is as follows:

"Assessment of damages upon dissolution of injunction or restraining order.—Upon the dissolution in whole or in part of any injunction or restraining order of any and every kind and nature whatsoever, the chancery court wherein the same was pending may assess and render against principal and sureties on the injunction bond a valid judgment for any and all damages occasioned by the issuance of such injunction or restraining order; and the court may either appoint a master to report as to such damages, or may render summary judgment therefor, or at its discretion may cause a jury

to be empaneled to find such damages. [Civil Code, § 320 (1st sentence); Acts 1915, No. 102, § 1, p. 389; C. & M. Dig., § 5822; Pope's Dig., § 7538.]''

In *Sullivan* v. *Wilson Mercantile Co.*, 172 Ark. 914, 290 S. W. 938, this court said:

''It may be first said that the verdict of a jury in a chancery case is advisory to, but not binding on, the court. *Hinkle* v. *Hinkle,* 55 Ark. 583, 18 S. W. 1049. But, inasmuch as the decree was rendered in accordance with the verdict of the jury, it must be assumed that the court coincided with and concurred in the finding of the jury, and that the verdict indicates what his own finding would have been, had he passed upon the question originally without the intervention of a jury.''

See also *Hinkle* v. *Hinkle,* 55 Ark. 583, 18 S. W. 1049 and *Magnolia* v. *Davies,* 188 Ark. 19, 64 S. W. 2d 85.

Since the chancellor has made the finding of the jury his own finding, he will of necessity be credited with the soundness and be charged with the fallacies of the logic and conclusions that entered into the jury finding. It appears from this record that the jury took the view that since the temporary injunction, which was dissolved as being without equity, was responsible for the closing of the business, the measure of appellees' damages was the combined sums of the debts of the business. With this we do not agree.

The record reflects that the business was, as one of the appellees stated, ''a losing proposition,''; that in almost five years of operation the business had operated at a loss with the exception of one year; that appellees were constantly in financial difficulty; that in 1959 they had issued a check for more than $6,000.00 without the money to secure payment of the check and they had importuned the appellant to help them in their difficulty. This the appellant did by getting the bank to hold the check and endorsing the note of the appellees in the sum of $6,000.00, and a major portion of such note still remains unpaid. The appellees were confronted with the

same situation just prior to June 1, 1960 and again besought the appellant to help them in their difficulty, but this the appellant declined to do and suggested to the appellees that they might more advantageously liquidate their business then than later on and, that according to the figures of appellees, they could liquidate and pay all their debts and have something over.

The appellees, as partners, appeared to have discussed this suggestion and knowing more of the status of their business than any other person, they decided the course was a wise one and the decision to liquidate the business was made by them. To that end they severed their connection with their suppliers and proceeded to hypothecate and to dispose of assets. From that point on, the Saline County Motors was not a going concern and any conclusion to the contrary is not based on the clear reading and the implications to be found from the record. The giving of checks against an inadequate balance at the bank, borrowing money to cover checks, disposing of assets, transferring of accounts receivable which might have been construed as being covered by the mortgage held by appellant, are not the earmarks of a prosperous, going business but speak most eloquently of a business that is ready for liquidation.

There is nothing in the record before us that would indicate that the injunction either accelerated or retarded the dissolution which the appellees had themselves initiated. We are not confronted here with the problem of a successful business whose orderly progress is disrupted by an injunction and the standing of which, as a going concern, might have been adversely affected. There is no showing that the final liquidation of the business would have been any more profitable to the appellees had the injunction not been granted in the first place.

The appellees had the same assets at the end of the five days during which the temporary injunction was in force that they had at the issuance of such injunction and the idea that the appellees would have fared better had the injunction not been issued is based on

pure conjecture,—there is no proof on that point. Neither do we find that the injunction revealed to the public any facts which the creditors and trading public were not entitled to know and we thus find that no damages after the dissolution of the injunction have been shown.

The temporary injunction was in effect for a period of about five days which included four working days. We have carefully read the case of *Citizens' Pipe Line Company* v. *Twin City Pipe Line Co.*, 183 Ark. 1006, 39 S. W. 2d 1017, and the cases cited, but that case is not controlling here. In the *Citizens' Pipe Line* case a temporary injunction was made permanent. Such is not the fact in the case before us. As to whether or not the damages arose during the five-day period the temporary injunction was in effect, whether they arose after that time, or whether damages stemmed from the issuance of the injunction and were suffered at a later date, we need not be concerned here. For taking the testimony from the hour the temporary injunction was issued to the date of the entry of the judgment, we find nothing that will sustain an award of $38,600.00 in damages.

There is some fragmentary evidence that during the life of the temporary injunction a prospective customer had made inquiry as to the price of a piece of equipment and that some job work was lost but these losses, for which appellant is liable, do not exceed $600.00.

For the reasons herein stated, the decree of the chancellor is reversed and this cause is remanded with directions to enter a decree against the appellant and in favor of the appellees in the sum of $600.00 and the appellees will recover their costs, both in the trial court and here.